Androscoggin & Kennebec R. R. Co. *v.* Androscoggin R. R. Co.

ANDROSCOGGIN & KENNEBEC RAILROAD COMPANY *versus* ANDROSCOGGIN RAILROAD COMPANY *& als.*

Where a bill in equity is filed in any county, the Court in that county has jurisdiction of all matters, interlocutory or otherwise, except such as by statute or the rules of Court may be passed upon by a Court in another county, or by a single Judge at chambers or in vacation.

Where a bill has been filed in one county, and afterwards an application is made for an injunction, to a Judge sitting in Court in another county, and the injunction is granted, it may be upheld, although the statute seems to contemplate that the act is to be done by a Judge out of Court, unless by the Court in the county where the bill is pending.

But if done in open Court in another county, it can have no greater power or effect than if done by a Judge at chambers.

After the injunction has been issued, the Judge has exhausted the power vested in him as a Judge out of the Court where the bill is pending.

Contempts of Court are of two kinds. Those committed in the presence of the Court, by insulting language, or acts of violence interrupting the proceedings, may be summarily punished by order of the presiding Judge, after such hearing as he may deem just and necessary.

The other class of contempts, which are in a sense constructive, arising from matters not transpiring in Court, but by refusing or neglecting to comply with orders and decrees of the Court to be performed elsewhere, are equally punishable, but by a different and less summary process.

The 28th rule of the Court "for practice in chancery," authorizing single Judges, in cases of contempt by refusing to obey any order or decree of the Court, to issue a writ of attachment "returnable at the next term," is to be construed as meaning the next term in the county where the bill is pending, and gives no jurisdiction to the Court in any other county, and no special jurisdiction to the Judge who may issue it in chambers, as to any further action upon it.

Where a bill in equity is pending in one county, and an injunction is applied for by the complainant to a Judge or Court in another county, the writ of injunction is properly made returnable to the county where the bill is pending; and a Judge or Court in another county has no jurisdiction of an alleged contempt, by disregarding or refusing to obey the injunction.

In matters of contempt, exceptions may be taken on the question of jurisdiction, where it is distinctly raised and adjudicated upon as matter of law.

The statute concerning nuisances, authorizing the Court, in any county, to issue an injunction, and to make such orders and decrees for enforcing or dissolving it, as justice may require, does not confer any additional powers on the Court in cases where the bill does not charge the acts complained of as a nuisance.

Androscoggin & Kennebec R. R. Co. *v.* Androscoggin R. R. Co.

COMPLAINT FOR ALLEGED CONTEMPT OF COURT.

IN September, 1861, the plaintiff corporation applied to the Supreme Judicial Court, then sitting in Somerset county, TENNEY, C. J., presiding, and represented that the defendants, being authorized by their charter to connect their road with that of the plaintiffs, had elected to do so, and had so connected their road, by consent of both corporations, both roads having their rails laid at the same guage of five feet and six inches distance from each other, so that the plaintiffs' engines and cars could readily and conveniently pass upon and be transported over the defendants' road; that by an Act of the Legislature, passed Feb. 15, 1860, the defendants had been authorized to extend their road from a point in Leeds, to connect with the Kennebec and Portland railroad, in Topsham, but subject to the same liabilities with regard to the extension, as with regard to that part of their road already built; that the defendants have nearly completed said extension from Topsham to Leeds, but have laid their rails at a less guage than 5 feet 6 inches, and are proceeding so to lay them, so that the plaintiffs' cars and engines cannot pass or be transported over the defendants' road; and that the plaintiffs are informed and believe that the defendants are intending to break up and destroy the connection established between said two roads; wherefore, they pray for a writ of injunction to restrain the defendants, their officers, agents and servants, from breaking and altering said connection, from taking up or removing their rails, or changing the guage of their road between Leeds Junction and Farmington.

On the foregoing application a hearing was had, and on Sept. 28, 1861, the Court granted the injunction prayed for, returnable at the "next Court where the bill is pending." The bill was originally entered and was pending in the county of Kennebec. Service was made by an officer, as appeared by his return, on Sept. 30, 1861, at 3 o'clock 40 minutes afternoon, on Samuel J. Robinson, one of the directors of the Androscoggin Railroad Company, and, on Oct.

1, at 9 minutes to 11 o'clock in the forenoon, on Daniel Patten, one of the directors, and on Washington Gilbert.

On the 3d day of October, 1861, the plaintiffs filed an application to the Court, then sitting in Somerset county, setting forth the granting of the injunction and the service made as returned; that Oliver Moses, Giddings Lane, Ensign Otis, John B. Jones and John Dyer, were all present and had knowledge of the hearing before said injunction was granted; and that, in contempt of the Court, the Androscoggin Railroad Company, on the 29th day of September, being the Lord's day, removed one of the rails of their road, from a point near Leeds Junction, to Farmington, and placed the said rail so near to the other rail of said road, that said rails are distant from each other but 4 feet 8½ inches, instead of 5 feet 6 inches, as they formerly were, thereby destroying all connection between said road and the plaintiffs' road, and rendering such connection impracticable; and that said Moses, Lane, Otis, Dyer and Jones, acting as officers and agents of the defendants, directed and caused the rails to be removed as stated, in disregard and contempt of the injunction and order of Court. The plaintiffs therefore move that the defendants, after being heard, may be adjudged guilty of contempt of Court, and committed to prison until the Court shall otherwise order, unless they, after notice, show cause why such judgment shall not be passed upon them.

The defendants, having been duly notified, appeared at the same term, and in the same county, on Oct. 8, and by their counsel, prayed that the process might be dismissed, because the matters alleged are insufficient in law to maintain said process, and because the Judge has no jurisdiction of the matter in this form, nor as a Court sitting in the county of Somerset.

The motion was overruled, and the defendants filed their several answers.

Messrs. Moses, Otis, Lane and Dyer, in their answer, deny that they had any knowledge of any order, decree or injunction of Court forbidding any of the acts alleged

against them, at the time when said acts were done, and disclaim any contempt of Court or disobedience to any order thereof.

J. B. Jones declares, in his answer, that he is not a director or officer of the company; that he never knew of the injunction being granted, either by notice served or rumor, until Wednesday afterwards; that he was in Court at the time of hearing, but left before any decision was had, and fully believed and was advised by counsel that, upon the case presented, no injunction would be granted; that he is a contractor on the extension, and that, pursuant to the preparations made long before any of these proceedings, he proceeded on Sunday, Sept. 29, to lay down the track across the plaintiffs' road, taking that day to avoid collision; that no part of the work ' done by his authority was done on the old track north and west of the plaintiffs' road, and he is advised that what he did was not within the purview of the injunction; and that, if any work was done on the old track by persons in his employ, it was done without any intention of contempt of Court.

The presiding Judge, after hearing, adjudged the defendant corporation, and Otis, Lane and Dyer, to be in contempt.

The defendants filed exceptions, which were allowed.

*W. Gilbert,* in support of the exceptions.

1. The Court sitting in Somerset county exhausted its functions when the writ of injunction was ordered. R. S., c. 77, § 10.

2. This is a remedial process in favor of the complainants, and the Court had no jurisdiction.

3. The remedy in such a case is provided by the rules in chancery practice. Rule 28.

4. The Court has no jurisdiction over the original bill. R. S., c. 77, § 8.

5. The Court in Somerset had no jurisdiction over the application for the injunction. R. S., c. 77, § 11.

6. The facts show no contempt committed.

*Evans*, in reply.

1. The Court, though sitting in Somerset county, had jurisdiction to grant the injunction and to punish for contempt. The statute does not prescribe any rule inconsistent with it. *Moore* v. *Veazie*, 31 Maine, 360, and 32 Maine, 343.

2. The injunction took effect from the time the order for it was given. (Saturday in the forenoon.) *McNeil* v. *Garrett*, 1 Craig & Phil., 88. From that moment it is binding upon all parties who have knowledge of it, *in any mode*, though no service be made. Parties who are present during the hearing, though not when the order is made, are bound, *as having knowledge*. *Osborn* v. *Tenant*, *Hearne* v. *Tenant*, 14 Ves., 136; *Jarvis* v. *Downes*, 18 Ves., 522; *Vansander* v. *Rose*, 2 Jac. & Wel., 265; *Scott* v. *Bacher*, 4 Price, 352; *Lewis* v. *Morgan*, 5 Price, 520; 3 Daw. Ch. Pr., pp. 1817, 1908, 1909; 3 Johns. Ch. Cases, 311.

"A party who disposes of property contrary to the terms of an injunction, with notice thereof, though before it has been served upon him, is guilty of a contempt." *Hale* v. *Thomas*, 3 Edw. Ch. R., 236.

In *Kempton* v. *Eve*, 2 Vea. & Bee., 349, a belief, merely, that an order had passed, was held sufficient.

In *People* v. *Sturtevant*, 5 Selden's R., 277, the Court approves these cases, and says, — "In administering the law in respect to the violation of injunctions, the Court of Chancery never lost sight of the principle, that it was the disobedience of the order of the Court which constituted the contempt, and therefore, although it required of the party availing himself of the order, a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of the order to be wholly lost, when the party, sought to be bound by them, had actual notice or knowledge of their existence, although there might have occurred some slip in the formal manner of bringing it home to him."

It is a contempt of the Court for a person to interfere

Androscoggin & Kennebec R. R. Co. *v.* Androscoggin R. R. Co.

with the property of a lunatic, after he is informed of the institution of proceedings to declare his incompetency. *L'Amoureux* v. *Crosby*, 2 Paige, 422.

3. All who are present, aiding and abetting in the breach of the order, are liable. *St. John's College* v. *Carter*, 4 Mylne & Craig, 497.

"An injunction forbidding any corporate act, is violated by every member of the corporate body, by whose assent or coöperation the act is performed; and every such member is guilty of a contempt for which he may be punished." Adams' Eq., 779, note citing *Davis* v. *Mayor of city of New York*, 1 Duer, 451.

4. In a proceeding against a party for contempt, the Court will not look into the merits of the cause in which the injunction issued. *People* v. *Spaulding*, 2 Paige, 326.

Not even where the party charged with contempt had not appeared to oppose the granting of the injunction. *Higbee* v. *Edgerton*, 3 Paige, 253; *Sullivan* v. *Judah*, 4 Paige, 444.

5. Whether or not the respondents, or any of them, had notice of the order, was a question of fact, the decision of which, by the Judge, is not liable to exceptions. The testimony bearing upon it is not before the Court. *Page* v. *Smith*, 25 Maine, 264; *Fletcher* v. *Church*, 29 Maine, 489; *Jackson* v. *Jones*, 38 Maine, 187.

*J. S. Abbott* argued further for the complainants, contending that the circumstances would have justified a more summary and severe process against the defendants for their disregard of the injunction.

Rule 28 of this Court, if it has not been complied with, does not apply to this case, but is evidently intended to govern proceedings in vacation. It was adopted in 1855, for cases in which "a remedy is not provided by statute." But the subsequent statutes of 1857 authorize the Court to punish contempts, to issue injunctions, and to exercise its jurisdiction "according to the common law, not inconsistent with the constitution or any statute." c. 77, §§ 4, 7, 10.

Thus a remedy is provided by statute, and the rule is superseded.

The Court in Somerset county having issued the injunction, the acts of the defendants were in contempt of that Court, and to that Court they are answerable.

The evidence reported, as well as that not reported, clearly shows that the decision of the Court was correct, and that the defendants were in contempt. While in contempt they should not be heard on the merits of the injunction, but should first be required to place the rails back where they were before.

The opinion of the Court was drawn up by

KENT, J.—The first fact to be considered is, that the complainants filed their bill in the county of Kennebec, and that a subpœna was duly issued from the clerk of that county. The bill having been thus filed in that county, the Court in that county had jurisdiction, and all matters, interlocutory or otherwise, in relation thereto, must be heard and determined there, except such matters as by statute or by the rules of Court may be passed upon by a Court in another county, or by a single Judge at chambers, or in vacation.

The next fact is, that, after the above proceedings, the complainants applied to this Court, then sitting in Somerset county, for an injunction to restrain the respondents from changing the guage of their road, by removing the rails and placing them nearer to each other. After notice and hearing, an injunction was granted by the Chief Justice, then presiding alone in that county. The injunction was issued as having been ordered by the Court, and is signed by the clerk, and bears the teste of the Chief Justice. It is objected that the *Court* in Somerset had no power to act; that the statute contemplates only the action of *a Judge at chambers*, and not the action of a Court in another county. The provision is found in c. 77, § 10 of R. S. It gives power to the Court, generally, to issue "writs of injunction in cases

of equity jurisdiction, and when specially authorized by statute," and it further provides, that "a Justice of the Court may issue them in term time or in vacation." There are other provisions in the statutes authorizing the Court, sitting in any county, to act in reference to cases pending or instituted in any other county—as in libels for divorce, c. 60, § 3 ; and in petitions for partition, c. 88, § 4. In these cases the power is given to the *Court* sitting in any other county. In cases of nuisance, it is provided that "any Court of record, before which an indictment, complaint, or action for a nuisance is pending, may, *in any county*, issue an injunction to stay or prevent such nuisance, and make such orders and decrees, for enforcing or dissolving it, as justice and equity require."

Although the law, in reference to granting injunctions, seems to contemplate that the act ordinarily will be done by a Justice out of Court, when not done by the Court in session in the county where the case is pending, yet we are not prepared to say, that where it is granted by a Judge, when sitting in Court in another county, and as an act of the Court, it is necessarily void. It is none the less the act of the Judge. It is *that*, with the formal certificate of the clerk, that it was done in open Court. The decree of the Judge, without any other certificate than his own at chambers, would be binding. It may be upheld as his act, although done in Court.

But it is clear that, if done in open Court, in another county, it can have no greater power or effect than if issued by a Judge at chambers. It derives its power and efficacy from its being the act of a Justice of the Court; not from its being an order of a Court in session.

If we regard the injunction in this case as having been duly issued, it follows, that, by this act, the Judge had performed his duty and exhausted the power given him as a Judge out of Court, in relation to issuing an injunction.

But if that injunction is disregarded, and the respondents refuse or neglect to obey it, what is the remedy ? Such ne-

glect or refusal may be, and usually is, a contempt of Court, for which the parties may be held and punished. The power in the Court to "punish contempts committed against its authority, by fine and imprisonment, or either," is expressly given by statute, c. 77, § 7.

There are two kinds of contempt recognized by the authorities and by the practice of the courts. Criminal contempts are those committed in the immediate view and presence of the Court, such as insulting language, or acts of violence, which interrupt the regular proceedings in courts. This class of contempts may and should be punished summarily, and by the order of the presiding Judge, or the Court, after such hearing, at once, as the Court may deem just and necessary.

There is another class of contempts, which are in a sense constructive, and arise from matters not transpiring in Court, but in reference to failures to comply with the orders and decrees issued by the Court and to be performed elsewhere. Such refusals or failures are undoubtedly contempts, as actual as those committed in open Court, and liable to be punished under the same law. But the process to bring parties into Court, and the time given for a hearing by our rules, are different from the summary process in case of a criminal contempt before the Court.

The exact question raised on this part of the case is, whether a single Judge presiding in a Court in another county, which has issued an injunction, can, on a motion or rule, setting forth a contempt by refusal or neglect on the part of the respondents, filed with him, or in that Court, after a notice and hearing, proceed to adjudge the parties in contempt, as a final judgment.

The writ of injunction issued in this case was addressed to the sheriffs of the several counties in the State, and the officer serving it was, by the precept, commanded to make return thereof, and of his proceedings, "to our next Court where the bill is pending." The writ was dated September 28, 1861.

Androscoggin & Kennebec R. R. Co. *v.* Androscoggin R. R. Co.

On the 3d of October thereafter, the complainants in the original bill made a motion, by filing in writing a rule or application, addressed to this Court then holden at Norridgewock, in and for the county of Somerset, setting forth refusal on the part of the respondents to obey the injunction, and acts on their part in direct violation of the injunction and in contempt of the Court, praying that, after an opportunity to be heard, they may be adjudged by said Court to be guilty of contempt, — and that a writ of attachment may immediately issue to arrest them, and that they be imprisoned until otherwise ordered.

The Court in Somerset ordered notice to be given, and on the day fixed, the parties appeared. The respondents filed a motion to dismiss the process for contempt, on the ground that neither the Judge presiding, nor the Court sitting in the county of Somerset, had jurisdiction of the matter. This motion was overruled. The respondents put in their answers to the charge of contempt, and, after a hearing, the Chief Justice presiding adjudged the corporation and certain of the respondents named, severally, in contempt. No sentence was passed. To all of such rulings, proceedings and adjudications, the respondents except, and these exceptions were duly allowed, so far as they are subject to exceptions.

Whatever doubts may be entertained as to a general right to except to the rulings and adjudications of the Court in matters of contempt, where the jurisdiction is unquestioned, we have no doubt that an exception may be taken on the question of jurisdiction, where it is distinctly raised and adjudicated upon as a matter of law. *Scruton* v. *Moulton*, 45 Maine, 417 ; R. S., c. 77, § 27.

The writ of injunction having been served, was, we assume, returned according to its precept, to the Court in Kennebec. What provision is to be found in the statutes or rules of Court as to proceedings — in case of a contempt in refusing or neglecting to obey the injunction? This is evidently a new matter, and requiring new action on the part

of the complainants. The rule of the Court, "for practice in chancery," points out plainly the course of proceedings. That rule is this : —

Rule 28. — " Contempts in refusing or neglecting to obey any decree, decision, direction or order of the Court, or of a member of it, when a remedy is not provided by statute, may be punished by an attachment, issued on a rule filed therefor by the counsel of the party injured, and notice thereof given, to which a response may be filed within ten days and notice given. The moving counsel may file a re- ply, and *transmit copies to a member of the Court for decis- ion*, who may order a writ of attachment, *returnable to the next term*, on which the party will be bailable, and the same proceedings may take place as provided in case of attach- ment, by Rule 4, and a new writ may issue *in* term time, on which he will not be bailable, but may be imprisoned until he comply, or until the further order of Court."

This rule evidently contemplates that the rule, answer and rejoinders, should all be in the county where the bill is pending. It gives no jurisdiction to the Court in session in any other county. It gives no special jurisdiction to the Judge who may have issued it in chambers, in relation to matters afterwards. As we have seen, when he had issued it his special authority in relation thereto ceased and termin- ated. The writ was returnable to the county where the bill was pending. If disregarded, the complainant or party aggrieved might move to bring the parties before the Court for a contempt. But the Court might not be in session in that county. The rule, therefore, allows action, (after cer- tain papers are filed,) by a single Judge out of Court—not necessarily the Judge who issued the injunction. What power is given to the Judge to whom the copies are, by the rule, to be transmitted? He is not to determine the ques- tion of contempt, or to adjudicate thereon. He may issue a writ of attachment, returnable to the next term, on which the party will be *bailable*. It is simply a process to hold the person to answer before the Court in the county where

the original process is pending, at its next term. The attachment is only a process to bring the party into Court, and is necessary in this class of contempts. *Jackson* v. *Smith*, 5 Johns., 115.

The rule and statute give full power to the Court, "in term time," to proceed against the parties found guilty. "Term time," means during the term of the Court in the county where the case is pending.

It is urged that this rule will not give a remedy sufficiently early to prevent, in some cases, great wrong and mischief. We are not now called upon to express an opinion on this point. It is sufficient that it is the rule of the Court, applicable to the case before us, and we are not at liberty to disregard it.

We have been referred to the statute concerning nuisances, before quoted, as sufficient authority for the Court in Somerset to issue the injunction, and to make orders and decrees for enforcing it.

The bill in this case does not charge that the acts complained of were a nuisance. It in substance alleges that the respondents intended to break up the connection then existing between the railroads, and to alter the guage of their road, whereby an injury would arise to the complainants. This the bill complains of as a violation of the rights of the orators, and in contravention of the agreement between the parties, under the provisions of their respective charters. It is clear that it is not a bill of which the Court could take jurisdiction as "a case of nuisance," and therefore the special statute, before referred to, which is limited to cases of nuisance, cannot apply.

Upon a careful consideration of this case, as it is presented to us, we are unable to find any authority in the Court sitting in Somerset county, or in the Judge who was then presiding in that Court, to determine the question of contempt, and to adjudge that the respondents were in contempt.

The parties may have waived their right to have time al-

lowed them to answer, by answering without claiming the delay given by the rule. But they did object to the jurisdiction before answering.

We, of course, have formed no opinion on the merits of the case, as set forth in the original bill. Nor are we called upon to express any opinion as to the facts, and whether they amount to a contempt or not. The exceptions state that much evidence was introduced which is not reported. Nor are we called upon to determine how far the decision of the Judge on the facts, is conclusive, or open to exceptions, in cases where the jurisdiction is unquestioned.

The entry must be—Exceptions sustained, and the proceedings of the Court in Somerset county, in this case, (after the issue and service of the injunction,) on the matter charging contempt, and the adjudication thereon, that the respondents, the Androscoggin Railroad Company, and Otis, Lane and Dyer, are severally in contempt, were *coram non judice* and void. This without prejudice.

RICE, APPLETON, CUTTING, DAVIS and WALTON, JJ,, concurred.