HARRY STERN, PETITIONER
FOR WRIT OF HABEAS CORPUS
*vs.*
ARTHUR W. CHANDLER, SHERIFF
AND
W. IRVING THOMPSON, DEPUTY SHERIFF

Penobscot.   Opinion, September 10, 1957.

*Harry Stern (Pro Se)*, for plaintiff.

*Orman G. Twitchell, Co. Atty.*, for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J.   The petitioner is an attorney at law.  During the trial of a criminal case before the Superior Court within and for the County of Penobscot, the petitioner while acting as an attorney for a respondent was adjudged guilty of criminal contempt of court. He was summarily sentenced to pay a fine of $100.00, and in default thereof, to serve fifteen days in jail. The petitioner refused to pay the fine and was delivered into the custody of the Sheriff of Penobscot County and one of his deputies, the respondents in the within cause. Petitioner forthwith addressed a petition for a writ of habeas corpus to a Justice of the Supreme Judicial Court. The writ was issued and after hearing, the writ was dismissed and the petitioner was refused a discharge.

To this ruling dismissing the writ, petitioner took exceptions, and the cause is before us upon these exceptions. The extended bill of exceptions includes a transcript of the testimony taken at the time of the hearing on the petition for

a writ of habeas corpus. There is also included therein so much of the evidence as relates to the finding of the Judge of the Superior Court at the time the petitioner was adjudged guilty of contempt and sentence summarily imposed upon him. The bill of exceptions shows that prior to imposition of sentence, the presiding justice made the following statement:

> "Mr. Stern, throughout this trial I feel you are guilty of contempt of Court, so serious that I cannot disregard it. I feel at this trial your contempt has been so flagrant I have a duty to act upon it. I feel your use of the expression, 'damned fool,' in your argument to the jury illustrates plainly the contempt you have for the Court and the procedure and disregard of the obligations of a member of the Bar."

There is nothing in the bill of exceptions attacking the jurisdiction of the court nor the form of the commitment.

Under the provisions of Section 16, Chapter 106, R. S. 1954, the Superior Court has power to punish for contempt.

However, even in the absence of such a statute, the power of the Superior Court to punish for contempts is unquestionable.

> "The power of courts to punish for contempt has existed from earliest times. It was useless to establish courts unless they had authority to punish acts which might interrupt the orderly course of judicial procedure." *Cushman Co., et al.* v. *Mackesy, et al.*, 135 Me. 490, 494.

> "The power of inflicting punishment upon persons guilty of contempt of court may be regarded as an essential element of judicial authority. It is possessed as a part of the judicial authority granted to courts created by the Constitution of the United States or by the Constitutions of the several states. It is a power said to be inherent in all courts of general jurisdiction, whether they are state or

Federal; such power exists in courts of general jurisdiction independently of any special or express grant of statute. 12 Am. Jur. 418, § 40.

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates." *Anderson* v. *Dunn,* 6 Wheat. 204, 227, *Ex Parte Terry,* 128 U. S. 289, 303.

"The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice, is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our Declaration of Rights." *Cartwright's Case,* 114 Mass. 230, 238, *Ex Parte Terry,* 128 U. S. 289, 303.

"The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied, because it is necessary to the exercise of all other powers." *Cooper's Case,* 32 Vermont 253, 257, *Ex Parte Terry,* 128 U. S. 289, 303.

Recognizing the power of the Superior Court in the instant case, to punish for contempt, we pass now to the question of the types of contempt.

"There are two kinds of contempt recognized by the authorities and by the practice of the courts. Criminal contempts are those committed in the immediate view and presence of the Court, such as insulting language, or acts of violence, which interrupt the regular proceedings in courts. This class of contempts may and should be punished summarily, and by the order of the presiding Judge, or the Court, after such hearing, at once, as the Court may deem just and necessary."

"There is another class of contempts, which are in a sense constructive, and arise from matters not transpiring in Court, but in reference to failures to comply with the orders and decrees issued by the Court and to be performed elsewhere. Such refusals or failures are undoubtedly contempts, as actual as those committed in open Court, and liable to be punished under the same law. But the process to bring parties into Court, and the time given for a hearing by our rules, are different from the summary process in case of a criminal contempt before the Court." *Androscoggin & Kennebec R.R. Co.* v. *Androscoggin R.R. Co.*, 49 Me. 392, 400; *Cheney* v. *Richards*, 130 Me. 288, 292; *Gendron* v. *Burnham*, 146 Me. 387, 398; *Cushman Co., et al.* v. *Mackesy, et al., supra.*

"Contempts have been classified as either criminal or civil. - - - The same act of disobedience to a decree may fall into either class, according to the purpose for which and the manner in which the court may deal with it. If the penalty is not imposed wholly for the benefit of the aggrieved party, but in part at least is punishment for the affront to the law, the contempt is deemed criminal. If, on the other hand, the power of the court is used only to secure to the aggrieved party the benefit of the decree, either by means of a fine payable to the aggrieved party as a recompense for his loss through disobedience to the decree, or by means of imprisonment terminable upon compliance with the decree, then the contempt is deemed civil. *Godard* v. *Babson-Dow Mfg. Co.* (Mass.) 65 N. E. (2nd) 555, 557.

Contempts have been generally defined as:

"Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity." *In Re: Holbrook* 133 Me. 276, 280.

"Misconduct by an attorney which reflects improperly on the dignity or authority of the court, or which obstructs or tends to obstruct, prevent or

embarrass the due administration of justice, constitutes contempt."

"Thus an attorney's refusal or failure to heed a proper order or admonition of the court constitutes contempt, - - - so also an attorney may be guilty of contempt for addressing insulting language to the court, or to an officer of the court, the jury or a witness, and it is unnecessary that he be warned against the use of such language." 17 C. J. S. 35, § 25 (b).

The petitioner, having been found guilty of criminal contempt committed in the presence of the court, attacks the legality of the action of the court and the sentence imposed upon him, by a means of a petition for a writ of habeas corpus.

It seems clear that at common law a court of competent jurisdiction was held to be the sole judge of contempt against its authority and dignity. Thus, its judgment in such cases was final and conclusive, and in the absence of constitutional or statutory provisions, there was no right of review in contempt proceedings. 17 C. J. S. 150, § 112.

It was universally stated that every Superior Court of record being, at common law, the sole judge of contempts against its authority and dignity, it naturally resulted that the judgment of every such court, in cases of contempt was final and conclusive, and not reviewable by any other tribunal. It was further held that the writ of habeas corpus is a collateral remedy, and under the well established rule that a judgment of a court of competent jurisdiction, upon a matter within its jurisdiction, cannot be collaterally impeached, the result was that, no question of jurisdiction being raised or involved, a conviction or commitment for contempt could not be reviewed by means of a writ of habeas corpus. At common law it was held that on a habeas corpus in a case of commitment for contempt, the court could examine only two questions: first, as to jurisdiction, and

secondly, as to the form of the commitment. When the jurisdiction was undoubted, and the commitment sufficient in form, the writ was discharged.

The common law doctrine was tersely expounded in *Ex Parte Kearney,* 7 Wheat. 38, in these words:

> "Generally speaking, the sole adjudication of contempt belongs exclusively and without interference to each respective court."

In the leading case of *Ex Parte Terry,* 128 U. S. 289, 305, it is indicated that one imprisoned for contempt would be entitled to discharge only when the judgment lies without the jurisdiction of the court, such judgment, under such circumstances, being a nullity.

> " 'The power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted unless the court can suppress disturbances and the only means of doing that is by immediate punishment. - - - It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial. Necessarily there can be no inquiry de novo in another court, as to the truth of the fact. There is no mode provided for conducting such an inquiry. There is no prosecution, no plea, nor issue upon which there can be a trial.' " *Ex Parte Terry,* 128 U. S. 289, 308.

> "In a proper case the writ of habeas corpus may be used to test the validity of an imprisonment for contempt. Its scope of efficacy, however, is narrow since it constitutes a collateral attack on the contempt proceedings - - -. Its sole function is to determine the court's jurisdiction to adjudge the relator guilty of contempt. From this it follows that the writ will not lie or issue where the court in committing the party for contempt acted within its jurisdiction and its orders, including the order of commitment, are not absolutely void. Where the court acted within its jurisdiction, the

justice or propriety of the commitment is not open to review on habeas corpus. Ordinarily the evidence will not be reviewed except to determine the question of jurisdiction." 39 C. J. S. 539, § 36.

The strictness of the common law rule is demonstrated by the manner in which the court in *Ex Parte Terry, supra,* disposed of the argument that the power to punish instantly, without further proof or examination, contempts committed in the presence of the court, is a power which may be abused and sometimes exercised hastily or arbitrarily. The court said:

"Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice." *Ex Parte Terry,* 128 U. S. 289, 309.

The court further stated that it was competent for a court of general jurisdiction, immediately upon the commission, in its presence of a contempt, to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form; and to further close the door to appellate redress, the court said:

"Whether the facts justified such punishment was for that court to determine under its solemn responsibility to do justice, and to maintain its own dignity and authority." *Ex Parte Terry,* 128 U. S. 289, 310.

However, it is clear that the strict rule of the common law has been relaxed and the tendency of judicial decisions has been to extend the right of review on questions of law in contempt proceedings. 17 C. J. S. 150, § 112.

"A court has power, on habeas corpus to inquire whether the facts confer jurisdiction upon the

court to make the particular order, and it may investigate the question whether the acts for which the petitioner has been committed constitute a contempt within the power of the court to punish contempts." 25 Am. Jur. 212, § 92.

"Where the court is without jurisdiction of the subject matter or of the parties or lacks power to make the order in the particular case, it cannot punish for contempt or disobedience of such order; and habeas corpus may be invoked to avoid such imprisonment and restore the person illegally imprisoned to his liberty. Accordingly, a petitioner will be discharged where he is imprisoned for violation of an order which the court had no authority to make." 25 Am. Jur. 213, § 93.

"The view expressed in some of the earlier decisions that the sufficiency of an act to constitute a contempt cannot be considered in a habeas corpus proceeding brought for the purpose of securing a discharge from the commitment ordered for a contempt has not received support in the later decisions. The rule as stated by many authorities is that the acts constituting the alleged contempt may be examined on habeas corpus to ascertain whether in law they constitute a contempt; and if they do not, the court was without jurisdiction to imprison, and the prisoner is entitled to be released. In other words, if the matters complained of in the contempt proceedings do not in law constitute contempt of court, an adjudication that they do constitute contempt does not make them do so, and relief from imprisonment for matters not amounting to contempt may be had by habeas corpus." 25 Am. Jur. 214, § 94.

"The prevailing view is that the accused may not, upon application for the writ of habeas corpus controvert the truth of the specific facts recited in the order adjudging him to be in contempt. - - - As it has been otherwise stated, the Court may consider whether the facts set out in a record constitutes contempt, but since habeas corpus is a col-

lateral attack in which the record is conclusively presumed to be correct, the Court cannot question the facts themselves as set out." 25 Am. Jur. 214, § 95.

"A statement filed by the Judge as to matters occurring before him is usually regarded as importing absolute verity." 12 Am. Jur. 444, § 78.

Subject to the limitation that in an action for habeas corpus for release from custody for a criminal contempt, the record is presumed to be correct and that the truth of the specified facts cannot be controverted, it is our opinion that this court has the power to review the facts shown by the record, for the purpose of testing their legal sufficiency. If the facts are not sufficient to constitute a contempt, then it follows that a conviction thereon will be erroneous.

It is our opinion that the common law rule prohibiting any review of a conviction for criminal contempt is too harsh, and some protection should be afforded against the possible arbitrary use of the power of the court to punish summarily for contempt. Because the powers of the judge to punish for contempt are so ample, they must be subject to an eventual scrutiny, so that it may be certain that there existed the substance of an occasion for their exercise.

That this court has already recognized the doctrine set forth in this opinion is indicated by various decisions.

In the case of *Bradley, et al.* v. *Veazie*, 47 Me. 85, a citation was issued to the appellants to appear before the Probate Court, to be examined on oath in relation to an alleged concealment or embezzlement of property of an estate. Pursuant to the statute authorizing the Probate Judge to commit to jail anyone who refused to answer lawful interrogatories, the appellants were committed to jail for failure to answer questions put to them in the Probate Court. The appeal was dismissed and the case remanded to the court below for further proceedings. This court held:

> "Whether the interrogatory be lawful or otherwise, or whether the commitment be justifiable or not, can be determined only by the Supreme Judicial Court on a writ of habeas corpus."

The rule we are enunciating in this decision to the effect that in habeas corpus the record may be examined to determine the legal sufficiency thereof, was applied in two other cases, viz.: *In Re: Holbrook,* 133 Me. 276, and *Gendron* v. *Burnham,* 146 Me. 387.

In the *Holbrook* case, brought to this court on exceptions to a dismissal of a writ of habeas corpus, the petitioner had been adjudged guilty of contempt and committed to jail for perjury alleged to have been committed in the presence of the court. The petitioner was discharged, the court holding that the extent of the court's powers was limited by the statutes applicable to cases of this kind, which statute authorized only that Holbrook be held by the grand jury for subsequent indictment. § 3, Chapter 135, R. S. 1954.

The *Gendron* case involved refusal of a witness to answer questions put to him before a grand jury. The court after citing with approval the statement found in *Bradley* v. *Veazie, supra,* that the question whether the commitment be justifiable or not, can be determined only on a writ of habeas corpus, discharged the petitioner and made the following statement:

> "In the contempt proceeding against the prisoner the court ruled that as he admitted being asked the questions and giving the answers which appeared in the affidavit, that that was sufficient to hold him for contempt, and then proceeded to sentence him to six months in jail therefor. This ruling by the court was erroneous. There being no evidence in the record which would justify a finding that the refusal to answer the questions before the grand jury was contumacious or obstructive, the witness was entitled to have specific rulings as to whether or not he should answer each question which he

had refused to answer. He was further entitled to an opportunity to answer such questions as the court ruled did not call for self incriminatory disclosures and which the court directed him to answer. This opportunity was not afforded him. The court made no ruling on the several questions as to whether or not the witness should answer the same, nor did it direct him to answer any of them or give him opportunity therefor. There was no contempt, and the sentence for contempt was not justified." *Gendron* v. *Burnham*, 146 Me. 387, 407.

As previously stated, the bill of exceptions does not attack the jurisdiction of the court, either as to the person of the petitioner or as to the subject matter. Nevertheless, we have given careful consideration to these two issues and we rule that the court had jurisdiction over the petitioner and over the subject matter.

In this case the mittimus upon which the petitioner was committed to jail contains no specifications as to the nature of the alleged acts of contempt and includes only a statement that the petitioner had been convicted of the crime of "criminal contempt of court in open court." The bill of exceptions raises no question concerning the sufficiency of this allegation. However, even if the imprisonment had been attacked for any alleged insufficiency in the mittimus, the petitioner would take nothing by such procedure, because as was said in the cases of *Wallace* v. *White*, 115 Me. 513, 521, and *Cote* v. *Cummings*, 126 Me. 330, 332:

> "It is the judgment of the Court which authorizes detention. The mittimus is the evidence of the officer's authority. The judgment is the real thing. The precept is not. The important question on habeas corpus is, is the prisoner in the custody where the judgment commanded him to be put and not how he was taken into custody."

In the bill of exceptions, we find this statement:

> "Your petitioner is a party aggrieved thereby in that no legal cause was shown for his restraint."

While this statement is somewhat ambiguous, we nevertheless consider it as an attack on the legal sufficiency of the facts for which he was sentenced and committed.

Pursuant to the rules laid down in this opinion, we, therefore, proceed to a study of the record with a view of determining whether or not the facts were legally sufficient to form the basis of a conviction for criminal contempt.

It seems that it is the general rule in England, that the facts constituting the contempt need not be set out in the record, and there are authorities in this country holding that a judgment or sentence for contempt is valid without any recital of facts upon which it is based. There is, however, a decided tendency towards adopting a rule which specifically serves the surer end of justice, that a court should make a finding of facts. 12 Am. Jur. 443, § 78.

There is a Federal Court rule which provides that a criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court; and the order of court shall recite the facts and shall be signed by the judge and entered of record. Rule 42 (a) Title 18 U. S. C. A., Federal Rules of Criminal Procedure.

> "In the absence of a statute requiring it, it is not necessary that a judgment in contempt state the facts constituting the contempt." 17 C. J. S. 124.

In this state we have neither a rule of court nor any statute applicable to the situation.

In the case of *Silverton* v. *Commonwealth,* (Mass.) 49 N. E. (2nd) 439, a contempt judgment was attacked by a writ of error, this procedure being authorized by statute in that Commonwealth.

The court after reviewing the common law of England and of various American jurisdictions pointed out the great

diversity in American decisions concerning the necessity of accompanying a sentence of criminal contempt with a detailed statement of its grounds. It concludes by suggesting that while a statement of fact is not necessary to the validity of a judgment for contempt, it is better practice to set forth definitely in the order the acts which are found to constitute contempt.

As good practice, in cases where one is punished summarily for a criminal contempt committed in the presence of the court, we are of the opinion that the judge should certify that he saw and heard the conduct constituting the contempt, and that it was committed in the actual presence of the court, and that the order of contempt should recite the facts. Such procedure, we believe, would better serve the ends of justice.

> "Where the record does not contain a statement of facts, any conceivable state of facts necessary and proper to sustain the orders complained of will be assumed, the findings in the contempt judgment will be taken as true, and the evidence will be presumed to justify the order of contempt." 39 C. J. S. 545, § 36.

In this case, we have a record, albeit a scanty one, in the statement of the judge made at the time of the conviction and found in petitioner's bill of exceptions.

In the case of *Albano v. Commonwealth,* (Mass.) 53 N. E. (2nd) 690, it is pointed out that contempt may consist of an objectionable manner, speech, attitude, conduct and tone of voice. In that case the court said:

> "The conduct of the plaintiff in error was consecutive and related. Each part of it might tend to lend flavor to the other parts. The judge could consider the effect of that conduct as a whole. He was not obliged to take action at the first sign of contemptuous conduct or at each separate recurrence of such conduct thereafter, and he did not lose his power to punish by failure to take that course."

In the instant case it would appear that the use of the words "damned fool" by the petitioner in referring to his client was but the culmination of many other acts on the part of the petitioner, throughout the trial, considered contemptuous by the presiding justice.

When the petitioner was found guilty of criminal contempt, and summarily sentenced, the court had jurisdiction over him and over the subject matter. An inspection of the record convinces us that the facts found by the judge were legally sufficient to support a finding of guilt.

In our opinion the statement found in *Cheney* v. *Richards*, 130 Me. 288, 292, to the effect that a finding of contempt by a court of competent jurisdiction cannot be reviewed is dictum, and insofar as such statement may be considered as authoritative, it is overruled by this decision.

*Exceptions overruled.*
*Decree below affirmed.*