**People of the State of Illinois, Appellee, v. Sam DeStefano, Appellant.**

Gen. Nos. 50,163, 50,164, 50,165.

First District, First Division.

November 8, 1965.

Rehearing denied November 26, 1965.

Julius Lucius Echeles, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In three separate orders, defendant, Sam DeStefano, was found guilty of contempt of court for his conduct during a trial, wherein he was charged with and found guilty by verdict and judgment of "illegally offering to vote," the subject of a separate appeal in this court, No. 50162.

Although defendant had counsel of his own choice, he also acted pro se during the 11-day trial, from November 16, 1964, to November 27, 1964. After the conclusion of the trial, three separate orders were entered on December 9, 1964, finding him guilty of direct contempt on November 20, 24, and 27, 1964. For each contempt, defendant was sentenced to the County Jail for a term of one year,

and the sentences were ordered to run concurrently. The third order also imposed a fine of $2,000.

On defendant's motion, the three separate appeals from the contempt orders, Nos. 50163, 50164, and 50165, were consolidated and are considered as one appeal. Also, on .defendant's motion, the Record and Abstract filed in appeal No. 50162 were allowed to stand as the Additional Record and Additional Abstract in the instant three appeals.

The three contempt orders are as follows:

Appeal No. 50163—contempt of November 20, 1964:

"Now, in the name and by the authority of the People of the State of Illinois, the defendant, Sam DeStefano, being present in his own proper person, the matter against said defendant of alleged direct contempt is considered by this court.

And, thereupon, the Court finds as follows:

1. That on November 20, 1964, being one of the days of the November term A. D. 1964 of the Circuit Court of Cook County, Criminal Division, the case of People of the State of Illinois vs. Sam DeStefano, Indictment No. 64–1435, Illegal Voting, come on to be heard in the regular course before the court.

2. That a petit jury had been duly impaneled and sworn to try the issues before them in said case.

3. That during the course of said case the defendant, Sam DeStefano, acted as his own counsel.

4. That throughout said trial which commenced on November 16, 1964, the court repeatedly asked said defendant, Sam DeStefano, to obey the court's rulings and instructions.

5. That on November 20, 1964, during the direct examination of witness, Mary Austin, the following took place:

Mr. Tuite, Assistant State's Attorney: . . . Q. Mrs. Austin what, if anything, happened after that,

after the defendant, DeStefano, signed his name on that document?

A. Then he goes to the two girls that have the—

Mr. McDonnell: Objection. Objection. It's obvious what this witness is doing. The witness is saying what—

The Court: Keep your voice down.

Mr. McDonnell: I beg your pardon.

The Court: You don't have to holler at me.

Mr. McDonnell: I am not hollering at your Honor.

Mr. DeStefano: Excuse me.

Mr. McDonnell: This witness is reciting what is ordinarily done.

The Court: Sit down and be quiet.

Mr. DeStefano: May I address the Court?

The Court: No.

Mr. DeStefano: Exception. The Court won't let me address the Court.

The Court: Sit down and be quiet.

Mr. DeStefano: You were hollering at my co-counsel.

The Court: Step in the chambers.

(Whereupon, the following proceedings were had in chambers, outside the presence and hearing of the jury.)

The Court: I am citing Mr. DeStefano for contempt. On the record. Your remarks have been contemptuous. You totally disregard the Court's order and instructions. You have been warned many times. At the end of this trial, we will take action on it.

Mr. DeStefano: May I address the Court?

The Court: You may.

Mr. DeStefano: May I make a statement for the record? I didn't mean to, Your Honor. I didn't want

to. But you were shouting at Mr. McDonnell much more than he was raising his voice.

The Court: That's contempt, also.

6. That the conduct of the defendant, Sam De Stefano, which conduct of said defendant took place while this court was in open session, tended to impede and interrupt the proceedings and lessen the dignity of this Court.

The Court further finds that the defendant, who is now and here present in open Court, is by reason of said conduct of said defendant, guilty of direct contempt of this court in open court.

It is, therefore, Ordered, Considered And Adjudged, that the said defendant Sam DeStefano, because of said contempt as aforesaid be and he is hereby sentenced to confinement in the County Jail of Cook County, Illinois, for a term of one year from December 9, 1964, and after delivery of the body, of said defendant to Warden of the County Jail of Cook County, or until he is otherwise discharged by due process of law and the Sheriff of Cook County is hereby committed to take the body of said defendant from the bar of this Court and confine the same in the Cook County Jail in safe and secure custody for and during said term as aforesaid."

Appeal No. 50164—contempt of November 24, 1964:

"Now, in the name and by the authority of the People of the State of Illinois, the defendant Sam DeStefano being present in his own proper person, the matter against said defendant of alleged direct contempt of this court is considered by the Court.

And thereupon the Court finds as follows:

1. That on November 24, 1964, being one of the days of the November A. D. 1964 Term of the Circuit Court of Cook County, Criminal Division, the case of People of the State of Illinois versus Sam De

Stefano, Indictment No. 64–1435, Illegal Voting, came on to be heard in the regular course before the Court.

2. That during the course of said case, the defendant, Sam DeStefano, acted as his own counsel.

3. That on November 24, 1964 said defendant Sam DeStefano presented a motion for a mistrial.

4. That during the hearing on the motion the following took place between the Court and defendant, Sam DeStefano.

The Court: Proceed, proceed.

Mr. DeStefano: Mr. Martin is also suborning perjury—

The Court: Stop screaming at the Court. There is no need to yell at the top of your voice in this courtroom.

Mr. DeStefano: Are you speaking only to the defendant, pro se, sir?

The Court: Yes, I am speaking to you because you are shouting and they are not shouting.

Mr. DeStefano: They were not shouting, sir? Let the record show that both—not both, Mr. Tuite was shouting when he interrupted me and continued shouting afterwards. That the defendant, pro se, does not shout. He does have strong lungs even though the rest of his body isn't as well as his lungs.

The Court: I cite you for contempt on that because Mr. Tuite did not shout at you.

Mr. DeStefano: He was shouting.

The Court: You are stating a falsehood when you say that he did shout because he did not raise his voice and shout.

5. That the conduct of the defendant, Sam De Stefano, which conduct of said defendant took place while this Court was in open session, tended to impede and interrupt the proceedings and lessen the dignity of this Court.

The Court further finds that the defendant, who is now and here present in open Court, is by reason of said conduct of said defendant, guilty of direct contempt of this court in open Court.

It is, therefore, Ordered, Considered And Adjudged, that the defendant, Sam DeStefano, because of said contempt as aforesaid be and he is hereby sentenced to confinement in the County Jail of Cook County, Illinois for a term of one year from after December 9, 1964, delivery of the body of said defendant to Warden of the County Jail of Cook County, or until he is otherwise discharged by due process of law and the Sheriff of Cook County is hereby committed to take the body of said defendant from the bar of this Court and confine the same in the Cook County Jail in safe and secure custody for and during said term as aforesaid."

Appeal No. 50165—contempt of November 27, 1964:

"Now, in the name and by the authority of the People of the State of Illinois, the defendant Sam DeStefano being present in his own proper person, the matter against said defendant of alleged direct contempt of this court is considered by the Court.

And thereupon the Court finds as follows:

1. That on November 27, 1964, being one of the days of the November A. D. 1964 Term of the Circuit Court of Cook County, the case of People of the State of Illinois vs. Sam DeStefano, Indictment No. 64–1435, Illegal Voting, came to be heard in the regular course before the Court.

2. That a jury was duly impaneled and sworn to try the issues before them.

3. That the defendant Sam DeStefano during the course of the trial acted as his own counsel.

4. That on November 27, 1964, the defendant delivered a closing argument to the jury selected in the above mentioned case.

5. That the defendant, Sam DeStefano made, among other things in this closing argument to the jury the following statements:

I want to also thank his honor for showing me and you people that I, the defendant Sam DeStefano, cannot get a fair trial. I think the Cardinal Mindzenty of Hungary received a fairer trial from the Russian communists than we received from this court and the State.

6. That in the same closing argument to the jury the defendant Sam DeStefano also made the following statements:

What I can't understand, here is a man on our bench, approximately 56 years old, who has always been known as a mild mannered man, a soft-spoken man. This man, Judge Herbert R. Friedlund, until this trial has been known as a fair, impartial, merciful judge. He was known as a good lawyer before he came upon the bench. He has a reputation throughout our county and state as a mild, fair gentleman at all times with an unblemished record.

What I can't understand is where this viciousness, where this man who was so mild all of a sudden became vicious, angry and treated this defendant and the spectators and the defendant's co-counsel as he has done in the past ten or twelve days. That, I can't understand. I know the man for what he has been. I don't know this man that has treated the defendant Sam DeStefano as he has done and made him belabor out here with the threat of contempt over and over again.

7. That in the same closing argument to the jury the defendant Sam DeStefano also made the following statements:

377

Lord Coke of England in 1620, and Pope Innocent, III, at around 1200 A. D. their bones must be turning over in their graves knowing what your Honor has done to this defendant, knowing the rulings, two great lawmakers such as them. That is the language that your Honor understands. Certainly, you must have learned and read of Lord Coke, one of our greatest lawmakers.

The Court: Talk to the jury.

Mr. DeStefano: I am talking to them, sir, when I am addressing you. Or Pope Innocent, III, the greatest lawmaker that ever sat on the papal chair. I'll bet you his bones are turning over this day.

Some day, Judge, you will sit in silence with your own conscience and say this is the dirtiest day's work you have ever done. You, sir, a man who was always so kind before, but this is the dirtiest day's work you have ever done.

How? Why? I would like to know the answer. I would give anything to know that answer, how a man like you could turn like this. For 56 years unblemished, and then so cruelly and inhumanly browbeat a defendant and his co-counsel like this.

All of you people heard Mr. McDonnell. He is not only my co-counsel but a very dear friend of mine. We associate together, and I am proud, and that's where I learned a little bit of my law. We have been together for a long time. He spends a great deal of time in my home and I spend a great deal of time in his home.

Now, if you recall, when Attorney McDonnell made that objection he really didn't shout loud. It was the judge who angrily tried to browbeat him. And I jumped up to object because he was prejudicing my case. He took me in for contempt of court. And he was the one that committed the crime. But it is a

weak judge, a weak judge who holds the whip of contempt of court over a citizen.

8. That the conduct of the defendant, Sam De Stefano, which conduct of said defendant took place while this Court was in open session and before a jury tended to lessen the authority and dignity of this Court.

It is, therefore, Ordered, Considered and Adjudged, that the said defendant, Sam DeStefano, because of said contempt as aforesaid be and he is hereby sentenced to confinement in the County Jail of Cook County, Illinois for a term of one year from December 9, 1964, and after delivery of the body of said defendant to Warden of the County Jail of Cook County, or until he is otherwise discharged by due process of law and the Sheriff of Cook County is hereby committed to take the body of said defendant from the bar of this Court and confine the same in the Cook County Jail in safe and secure custody for and during said term as aforesaid. And I further fine the Defendant, Sam DeStefano, the sum of Two thousand dollars for his contempt."

Defendant's contentions here are: (1) the recitals in the orders are not complete; (2) the conduct of defendant was not per se contemptuous under the circumstances; (3) the court failed to take into consideration defendant's ill health and his lack of legal training; and (4) the sentences were excessive and unnecessarily punitive.

■■ We consider first defendant's contention that the recitals in the orders are not complete. He argues the orders do not include necessary language, and for that reason they are defective and should be reversed. We agree that it is necessary for the trial court to enter a written order setting forth fully and clearly the facts out of which the contempt arose. (People v. Rongetti,

344 Ill 107, 176 NE 292 (1931).) All the essential facts must be fully set forth, and no part thereof can be supplied by presumptions or inferences. However, an order may be so drawn as to include matters by reference, and on review such matters so incorporated may be considered as part of the order. People v. Tavernier, 384 Ill 388, 51 NE2d 528 (1943).

As to the order covering the contempt of November 20, 1964, defendant argues that "there nowhere appears in the order any of the court's rulings or instructions which the order states the court *repeatedly* asked defendant to obey. Nor does the recital in the order state that the defendant *failed* to obey such court's rulings and instructions." As to the order for the contempt of November 24, 1964, defendant states, "The recital order sets out only a part of the proceedings which took place. For if, as is apparent from the recital order the only reason the court held the defendant in contempt was that he stated that Mr. Tuite, the prosecutor was shouting also, it would be unfair not to permit the twenty-one persons in the audience to give sworn testimony to the fact that Mr. Tuite also shouted." As to the order for the contempt of November 27, 1964, defendant notes that "the recital order . . . stated that during the closing argument to the jury the defendant 'made, *among other things* in this closing argument to the jury the following statements. . . .' Thereafter, the court excerpted certain of the statements which it deemed to be contemptuous."

An examination of the orders to ascertain the merits of this contention shows that the order for the November 20 contempt states defendant was told twice to "sit down and be quiet," and his remarks included, "You were hollering at my co-counsel." This was in the presence of the jury. In chambers, and in citing defendant for contempt, the court said, "Your remarks have been contemptuous. You totally disregard the Court's order and instructions. You have been warned many times. At

the end of this trial, we will take action on it," and defendant's remarks in reply included, "But you were shouting at Mr. McDonnell much more than he was raising his voice." This colloquy in open court and in chambers demonstrates contemptuous conduct per se.

■ The order for the contempt of November 24 shows a colloquy between the court and defendant, and that after defendant was directed to "stop screaming at the Court. There is no need to yell at the top of your voice in this courtroom," he made disrespectful remarks to the court. At defendant's suggestion, we have examined the Abstract filed in appeal No. 50162 and note that the recital order does not include all of the proceedings which then took place, including the following:

"The Court: I don't know what you think you are accomplishing by screaming at me.

"Mr. DeStefano: Well, your Honor, I am not screaming at you. You stand here and let him call me an ex-convict. If you have any personal animosity against me you know what to do. You know where I live, I don't know where you live. Why don't you send me an invitation? "

■ The foregoing excerpt from the colloquy of November 24 does not militate against a finding that the recital part of the order is sufficient to demonstrate contemptuous conduct per se. Likewise, the order covering the contempt of November 27 amply manifests contemptuous conduct per se. We hold that the recitals in each of these three contempt orders are sufficient to sustain a finding of contempt in each instance.

We consider next defendant's contention that his conduct "was not per se contemptuous under the circumstances." Defendant argues that he was not a lawyer, and that he was on trial from November 16, 1964, to November 27, 1964, charged with a crime never before prosecuted in this state; "he was, as he put it, fighting

381

for his life. . . . The stress and strain on a defendant while standing criminal trial is considerable. How much more when that defendant chooses (foolishly perhaps) to represent himself and engages in colloquy and argument with court and prosecutor?" He further states, "We believe that every judge who has had the experience of presiding over criminal trials has had to caution counsel at one time or another to keep his voice down—both counsel for the State and for defendant. If every time a voice was raised above normal speech level, there was an order of contempt, the bar of criminal practitioners would be decimated for such periods of time as the courts imposed sentences."

Defendant further states that in his address to the jury, "the thrust of defendant's argument was that he received an unfair trial at the hands of the court," and his remarks related to "the court's conduct of the trial." He asserts because no objections or attempts were made to stop the defendant from proceeding with the kind of argument he was presenting to the jury, "defendant was led to believe that his remarks to the jury were not improper; for otherwise, there would have been objections. At the outset of his remarks, the defendant apologized to the jurors for all the time that was wasted, but stated that it was not the fault of the defense, but that it was the fault of either the State or the court. *Both* prosecutors objected; and the court struck the remarks of the defendant." He argues, "The court's failure to interject during the closing argument, and the failure of the prosecutor to make any protest, militates against the finding that defendant's remarks to the jury 'tended to lessen the authority and dignity of this court.'"

In reply, the State argues that the contempt order for defendant's conduct of November 20 shows that the defendant, "in the presence of the jury reprimanded the Court," and "this conduct tend[ed] to impede the proceedings and disrupt the orderly process of a trial," and

382

"four days later the Court held the defendant in contempt once more." The State asserts, "[at that time] the defendant questioned the Court's veracity and blatantly accused the Court of stating a falsehood when the Court said the prosecutor was not shouting. This conduct surely brought the administration of justice into disrespect." As to the third contempt, the State comments that "during his closing argument (or rather, tirade) Mr. DeStefano made an attack upon the Court in what will probably go down in legal history as the most contemptuous performance ever seen or heard. It seemed as if the contemnor was delivering a speech on how to be contemptuous by really trying."

■■■■■■ The guidelines to be used in reviewing contempt orders are set forth in People v. Loughran, 2 Ill2d 258, 118 NE2d 310 (1954). On page 262, the court said:

"All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the administration and execution of their judicial powers. A summary proceeding to punish for direct contempt, properly used within the discretion of the court, is not a violation of the constitutional guarantee of due process. In re Terry, 128 US 289; People v. Siegal, 400 Ill 208."

On page 263, the court said:

"In a direct criminal contempt proceeding, that is, for contempts committed in the presence of the judge, in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required. (In re Terry, 128 US 289, 9 S Ct 77.) The contempt having been committed in the presence of the court, evidence is unnecessary and no record is made. (People ex rel. Owens v. Hogan, 256 Ill 496.) However, the accused has a right of appeal, and it is, therefore, necessary for

the court to enter a written order setting forth fully and clearly the facts out of which the contempt arose so that the reviewing court may determine if the committing court had jurisdiction to enter the order. (People v. Rongetti, 344 Ill 107.) All the essential facts must be fully set forth and no part thereof can be supplied by presumptions or inferences (People v. Tavernier, 384 Ill 388,) and no facts which did not occur in the presence of the court should be taken into consideration by the court in adjudging guilt or in fixing the punishment. People v. Rongetti, 344 Ill 107.

"The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered."

 The following pronouncements are also pertinent here. Conduct which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect or disregard, constitutes a direct contempt and is punishable as such. (People v. Gard, 259 Ill 238, 242, 102 NE 255 (1913).) Statements reflecting on the personal integrity of a judge in a suit that is pending before such judge is contempt of court. (Kneisel v. Ursus Motor Co., 234 Ill

384

App 371, 380 (1924).) "A trial properly conducted is a dignified procedure. . . . Often in the heat and fervor of a sharply contested trial these standards are forgotten. Too often they are not only forgotten but completely disregarded and dragged in the mire. Objections properly made are addressed to the court and counsel is entitled to state his reasons for his objections, but an inflammatory statement accompanying each objection, apparently made solely for the purpose of prejudicing the jury, is improper. Abuse of opposing counsel and of the court has no proper place in a trial. All of these matters rest within the control of the trial court, and the trial court has the power and duty to preserve decorum. The trial court can and should institute contempt proceedings against recalcitrant counsel and impose either a fine or jail sentence." Eizerman v. Behn, 9 Ill App2d 263, 286, 287, 132 NE2d 788 (1956).

In contempt proceedings, no matter how fully and clearly the facts are set forth, the recital part of the order cannot convey the complete picture of the courtroom scene. It does not depict such elements of misbehavior as expression, manner of speaking, bearing and attitude of the respondent. "Reliance must be placed upon the fairness and objectivity of the presiding judge. The occurrence must be viewed as a unit in order to appraise properly the misconduct, and the relationship of the petitioner as an officer of the court must not be lost sight of." (Fisher v. Pace, 336 US 155, 161 (1949).) See, also, Sacher v. United States, 343 US 1 (1952), where the court said (pp 10, 11):

"In this case counsel repeatedly were warned that their conduct was regarded as contemptuous. No claim can be made that the judge awaited the close of the trial to pounce upon them for some offense unnoted at the time it occurred. If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to

pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. We think it less likely that unfair condemnation of counsel will occur if the more deliberate course be permitted. . . . We hold, . . . that if [the trial judge] believes the exigencies of the trial require that he defer judgment until its completion he may do so without extinguishing his power."

 When a defendant in a criminal trial undertakes to exercise his constitutional right to conduct and manage his own case pro se, it necessarily follows that he cannot embarrass or obstruct the court during the course of the trial. He does not have the right to let his temper, his zeal or his intention lead him into disrespectful, accusative language to the court. The trial court must, of necessity, maintain order and decorum in its presence. To sanction such conduct in open court, before a jury, would be to demoralize the authority of the court before the jury and the public. See MacInnis v. United States, 191 F2d 157, 159 (1951). Whether a contempt has been committed depends upon the act and not the alleged intention of the offending party. Kneisel v. Ursus Motor Co., 316 Ill 336, 342, 147 NE 243 (1925).

██ Considering the instant contempt orders in the light of the foregoing, we hold that the recitals in each of the three orders, of the facts which occurred in open court and in the presence of the court and jury during the trial, were sufficient for the entry of summary contempt orders and within the inherent power of the trial court. It was within the court's sound discretion to enter the orders after defendant's criminal trial had concluded, because the entry of the contempt orders on the occurrence dates might have endangered the due progress and termination of a difficult and extended trial.

Finally, the defendant contends that the court failed to take into consideration defendant's ill health and defendant's lack of legal training, and "under all the circum-

stances of the case the sentence was excessive and unnecessarily punitive."

Defendant argues, "We do not contend, as a matter of law, that a defendant representing himself has any greater privilege than a lawyer trained in the art of trial. We do contend, as a practical matter, that a defendant trying his own case cannot lessen the dignity of the court in complaining to a jury that he received an unfair trial at the hands of the court. However inept and artless his remarks may have been, certainly the jury must have considered that remarks, which may not have been in good taste, came from a defendant who was not a lawyer, and against whom a felony conviction had been proved." Also, defendant argues that the sentence and fine "exceeds the punishment for conduct during a trial in any single contempt case of which we are aware, either in the federal or state courts." Instances are cited where lawyers, found guilty of contempt, have been fined or sentenced from ten days to six months.

In reply, the State argues that "during the trial the defendant made objections and moved for mistrials when he thought it was appropriate. All this clearly shows that the defendant did have more than a rudimentary understanding of the law. In fact, when he wanted to, he acted as an attorney. The plea that the contemnor was without legal training and therefore should in some way mitigate his conduct is without merit," and further, "how the defendant's claimed ill health could excuse or mitigate his scurrilous attack on the court or his other reprehensible conduct and serve as a bar or shield and refuge is beyond comprehension. Has physical illness ever been a defense to a crime?"

We find the instant contempt orders recite flagrant misconduct, disrespect and open defiance of the court's authority, continued in the face of repeated warnings and findings of contempt during the trial. These contempts clearly embarrassed the court, disrupted and

■■■■■■■■■

defeated the prompt and fair administration of justice. No court should permit such gross, deliberate and blatant disrespect for the court to go unpunished, whether by a lawyer or by a layman acting pro se in his own defense. Our courts could not long endure under such circumstances. Remarks made in Hallinan v. United States, 182 F2d 880 (1950), are apropos here (pp 887–888):

> "Complaint is made as to the severity of the sentence. It is severe. We are unable to say the Court abused its discretion in imposing it. Gross misconduct merits commensurate punishment. We cannot have the same appreciation of an existing situation, from a review of a cold record, as does a presiding judge who witnesses the transgressions and senses the unfavorable impact upon the orderly administration of justice. An officer of a court has a higher duty to assist in maintaining the dignity and integrity of courts than does the ordinary citizen. True, every lawyer, if he is worthy of the name, must use every legitimate effort in support of his client and in so doing will be relieved from an improper contempt judgment. . . . No such condition exists here. The record reflects quite the contrary."

For the reasons given, the three orders of contempt appealed from, consolidated and considered as one appeal, are affirmed, and as the County Jail sentences are to be served concurrently, we see no reason to disturb them.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.