Grover G. ALEXANDER

v.

Charles SHARPE, Sheriff.

Supreme Judicial Court of Maine.

Aug. 15, 1968.

Grover G. Alexander, pro se.

John W. Benoit, Jr., Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal from the dismissal of the writ of habeas corpus.

On July 6, 1967, the petitioner, an attorney-at-law, was acting as attorney for the plaintiff in the trial of a civil action for negligence before a jury in the Cumberland County Superior Court. At about 4:45 P.M. on that afternoon, the second day of the trial, the petitioner responded to a ruling of the Presiding Justice with the words "I think it demonstrates your prejudice without doubt." These words, addressed to the Justice, were spoken during trial and in the presence of the jury. The Justice answered that the matter would be discussed in chambers, adjourned court until morning without further comment, and left the building. The following morning he discussed the matter in chambers with counsel and granted petitioner's request that

a mistrial be ordered in the case, and then, in the courtroom, adjudged the petitioner to have been in contempt and sentenced the petitioner to serve five days in the county jail and to pay a fine of five hundred dollars.

The petitioner took no appeal from the judgment of contempt against him but requested that execution of the sentence should be delayed until five o'clock that afternoon because of reasons concerning his family. The Justice granted his request. At five o'clock the petitioner surrendered himself to the Sheriff and, at the same time, filed a petition for the writ of habeas corpus. The writ issued and hearing was had before a Justice of this Court. The writ was ordered dismissed, petitioner furnished bail, and the matter comes before us on petitioner's appeal from the dismissal of the writ of habeas corpus.

■ Until the adoption of our Maine Rules of Criminal Procedure in 1965, neither our statutes nor our rules provided for appeal from judgments for contempt. Review by habeas corpus has been accepted, there having been no other method available and, in Stern v. Chandler, 153 Me. 62, 134 A.2d 550 (1957), this remedy was expanded to include review of the facts as well as of jurisdiction and form of commitment. M.R.Crim.P. Rule 37 now provides that whenever a judgment of the Superior Court is by law reviewable by the Law Court, review shall be by appeal. Appeal, and not habeas corpus, is now the appropriate method for review of Superior Court judgments for criminal contempt. Glassman, Maine Practice, 42.5. As the petitioner here took no appeal from the judgment of contempt against him, the matter is not properly before us. However, as this case is the first of its kind to reach this Court since the adoption of the new Rules we have treated the matter as though the correct procedure had been followed.

Petitioner designated some twenty-five points to be relied upon on appeal. Our dis-

position of the matter will make discussion of most of them unnecessary.

## JURISDICTION

Petitioner contends that while the Court had undisputed jurisdiction over the subject matter and over his person, it lost this jurisdiction when it failed to take action against petitioner until the morning following the incident in question.

■ It has long been recognized that the power of a court to punish summarily for a contempt committed in the presence of the Court is inherent in the nature and constitution of a court and necessary for the court to possess in the exercise of all its other powers. Ex Parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Authority for the exercise of this power by the Superior Court is also found in 4 M.R.S.A., Section 114, and in M.R.Crim.P. Rule 42(a) but this statute and rule only restate what substantially has been the common law.

■ Unquestionably the alleged contempt here was of the type classified as a criminal contempt, as distinguished from a civil contempt. Godard v. Babson-Dow Mfg. Co., 319 Mass. 345, 65 N.E.2d 555 (1946). This Court has long recognized this distinction and has said that this class of contempts should be punished "summarily" (Androscoggin and K. R. R. Co. v. Androscoggin R. Co., 49 Me. 392 at 400 (1862)) and "by immediate punishment". (Stern, supra, 153 Me. p. 68, 134 A.2d 553, quoting Ex Parte Terry, supra.)

■■ We do not view the use of the words "summarily" and "immediate" as precluding the Justice's use of reasonable time for deliberation and consideration before he takes such severe action. Summary action, as used in reference to criminal contempt, means without the necessity of notice and hearing as are required in cases of criminal contempt where the contempt is not committed in the immediate view or

presence of the Court. M.R.Crim.P. Rule 42(b).

> "We think delay was not only proper, but laudable on the part of the trial judge. The word 'summarily' in the rule does not require a hasty determination." In re Osborne, 344 F.2d 611 (9 Cir., 1965).

■ The record shows that the Justice was greatly disturbed by the petitioner's conduct and its possible effect upon the trial of the case. The delay over night while the Justice reflected upon the matter and determined what course of action the circumstances required him to take was proper and commendable and the Court lost jurisdiction over neither the cause nor the petitioner by its deliberate action. People v. De Stefano, 64 Ill.App.2d 368, 212 N.E.2d 368 (1965); Hallinan v. United States, C.A. 9, 182 F.2d 880 (1950); United States v. Galante, 298 F.2d 72, 100 A.L.R.2d 431 (2 Cir., 1962); Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

## DUE PROCESS—SUFFICIENCY OF FACTS

The petitioner contends that the facts disclosed by the record are not sufficient to constitute a contempt.

Petitioner's client, the plaintiff in the case of Doughty v. Anderson, sought recovery for personal injuries. Early in the testimony of plaintiff's first witness on the morning of July 6th, the Presiding Justice, on objection by defense counsel, ruled that he would exclude any testimony relating to permanent impairment of the plaintiff because of the fact that the pre-trial memorandum, prepared by counsel, had contained no claim by plaintiff for permanent impairment. The Court and counsel then went into chambers where the petitioner vigorously opposed the Justice's ruling and under the Court's direction a record of the parties' positions was carefully prepared for their use if the issue should be raised upon appeal.

Following this, the Court offered the petitioner an opportunity to discontinue the trial and amend the pre-trial order to permit the disputed issue to be considered at a later trial. Petitioner declined this offer.

If the petitioner believed that the Justice's ruling was in error (and we do not suggest that it was in error,) it was still his ethical duty as an officer of the Court to abide by the ruling during the trial and then, if the jury verdict required it, to exercise his well protected right to review the issue on appeal. No other conduct is consistent with fair and orderly trial procedure and with respect for the rights of the opposing party. Instead, petitioner persisted in a line of questioning designed to establish in the jurors' minds the impression that plaintiff had suffered permanent impairment. Several rulings adverse to petitioner resulted. Finally, after a ruling adverse to petitioner on another issue the petitioner announced that he would now take advantage of the offer to discontinue the trial which the Justice had made that morning. The Justice refused to allow petitioner that earlier declined privilege and the petitioner, in the presence of the jury, accused the Justice of prejudice.

■ Petitioner's accusation of prejudice was clearly an act of contempt of court. Its immediate and obvious results were to disrupt the trial, to inject in the minds of the jurors strong resentments incompatible with the dispassionate determination of the issues before them, and to deprive both plaintiff and defendant of an early resolution of their litigation. A more extended harm to be expected from such an accusation on the part of an officer of the court is a lessening of public respect for the bench, the bar and the judicial process.

The decree of the Justice below dismissing the writ of habeas corpus fairly and succinctly described the necessity of respect for the Court on the part of counsel.

> "A Judge is a representative of the judicial system and as such must be accorded, while functioning in a courtroom, the re-

spect which his position demands. The responsibility of a properly conducted case rests on the shoulders of the Judge who has the duty of so conducting the trial of the controversy that the solemnity and decorum of a courtroom is maintained at its highest level. Party litigants are entitled to a well ordered trial of their causes, the public expect it and they are entitled to it. Trials are open to the public and what transpires in the courtroom is of public notice and concern. The jury, counsel, litigants, witnesses, court officers, representatives of the press and spectators are all observers of courtroom proceedings. They hear and see trial action and carry a message to the public as to what might be expected by any litigant who seeks judgment in a court of law. The message they carry is dependent upon a Judge's supervision in conducting a trial and counsel's conduct including his respect for and civility to a Court. A member of the legal profession, above all others, should be sensitive to the respect a Judge is entitled to while performing his duties in a court of law and conduct himself accordingly."

Petitioner asks us, in his brief,

"What is an attorney to do under trial conditions when he is confronted with a series of what he believes to be erroneous and prejudicial rulings from the Court?"

The United States Supreme Court has answered this question in Sacher v. United States, supra, 343 U.S. at p. 9, 72 S.Ct. at p. 455, 96 L.Ed. 723, cited by petitioner, saying that if the Court's ruling is adverse,

" * * * [I]t is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal."

RIGHT TO JURY TRIAL

Following publication of the decisions of the United States Supreme Court in Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. State of Illinois, 391 U.S. 194,

88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), which were decided on May 20, 1968, petitioner was given leave to add to his Points on Appeal the contention that it was his constitutional right to have the issue of his contempt determined by jury trial.

Although the Court later in De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) held that the constitutional principles announced in *Duncan* and *Bloom* were not applicable to trials commenced before May 20, 1968, thus excluding petitioner's conviction from their holdings, we have considered the effect of *Duncan* and *Bloom* upon contempt convictions in Maine courts.

The inherent authority of the Court to protect its decorum and integrity by punishing for all contempts without trial by jury has always been accepted in this State. Until recently this view prevailed in the federal system also.

"It has always been the law of the land, both state and federal, that the courts— except where specifically precluded by statute—have the power to proceed summarily in contempt matters." United States v. Barnett, 376 U.S. 681, at 692, 84 S.Ct. 984, 12 L.Ed.2d 23, at 32 (1964)

In 1966 in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), the Court found constitutionally permissible a summary conviction for contempt without jury trial in a federal court in which a sentence of six months was imposed, finding this to be a "petty" offense. Under federal statutes and decisions misdemeanors, the penalties for which do not exceed six months, are petty offenses and do not require jury trials. The Court, in the exercise of its supervisory power, then ruled that in federal courts sentences exceeding six months in length may not be imposed for criminal contempt, without jury trial or waiver.

*Duncan* and *Bloom* do not support the petitioner's position here. In *Duncan* the Court held that the Fourteenth Amendment

guarantees the right of jury trial in all state cases in which, if they were tried in a federal court, jury trials would be required by the Sixth Amendment. The Court observed that under Louisiana statutes simple battery is punishable by imprisonment up to two years and is thus not a petty offense but a serious crime entitling petitioner to a jury trial. The Court said:

"It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses, * * * But the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment."

In *Bloom* the Court repeated that the guarantees of jury trial found in Article III and the Sixth Amendment do not apply to petty offenses and that

"* * * criminal contempt is not a crime of the sort that requires the right to jury trial regardless of the penalty involved."

■ The Court went on to say that where, as in Illinois, the legislature has not expressed a judgment as to the seriousness of an offense by fixing its maximum penalty, the Court would look at the actual penalty to determine the seriousness of the offense. It then found that the sentence of two years imprisonment imposed upon Bloom compelled the classification of his offense as a serious one. We have no statutory maximum penalty for criminal contempt in Maine. Neither Duncan nor Bloom fixed the exact line between petty and serious offenses but we find no suggestion in either opinion that the imposition of such a penalty as petitioner received here would require jury trial for criminal contempt.

## REGULARITY OR PROCEEDINGS—DISQUALIFICATION OF OFFENDED JUSTICE

Petitioner relies on M.R.Crim.P. Rule 42 (b) which reads in part:

"A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. * * * The person charged is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from presiding at the trial or hearing except with the defendant's consent. * * *"

■ Rule 42(b) expressly excepts from this requirement the action of a justice for contempts occurring in the justice's presence. Neither our Rule 42(a) nor the Federal Rule from which ours was adopted disqualifies the Presiding Justice from dealing with contempts committed in open court in his presence in cases where the alleged contemptuous conduct, besides offending the orderliness of the proceedings, also impugns the integrity of the Justice. The need for summary action plus the advantage of the presiding justice's first hand observation of the offending actions and their background must be balanced against the danger that personal resentment may enter into the Justice's evaluation of the incident.

In Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925) the United States Supreme Court, examining an occurrence involving a Rule 42(a) contempt, announced its approval of procedure under which the offended justice requests that the matter be heard before another justice, although the language of the Rule does not provide for it. The Court said:

"All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that where conditions do not make it im-

practicable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place."

In Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), cited by the petitioner, the Court dealt with a 42(a) contempt in which the presiding justice became involved personally to an unusual extent in bitter interchange of remarks with counsel.

"The record discloses not a rare flare-up, not a show of evanscent irritation—a modicum of which temper that must be allowed even judges. The record is persuasive that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner. There was an intermittently continuous wrangle on an unedifying level between the two."

*Offutt* presented the exceptional case. The Court concluded that the extent of that judge's personal involvement should preclude his sitting in judgment upon that petitioner's conduct and that there "[the] application of the rule pronounced in Cooke v. United States is called for." The Court made clear its appreciation of the importance of summary action in in-court contempt proceedings and its appropriateness in all but unusual instances, saying:

"We do not mean to imprison the discretion of judges within rigid mechanical rules. The nature of the problem excludes it."

█ Although our Rule 42(a) does not require an offended justice to refer an alleged in-court contempt to another justice for hearing, we agree with the wisdom of the Cooke rule that he may do so. 17 Am.Jur.2d, Contempt, Sec. 85. Our examination of the record in Doughty v. Anderson convinces us that the facts in the present case did not compel such a reference.

## DUE PROCESS—REGULARITY OF PROCEEDINGS—ALLOCUTION

In the courtroom on the morning of July 7th the Presiding Justice ordered a mistrial in the case of Doughty v. Anderson and explained to the jurors his reason for doing so. He then addressed the petitioner stating his reasons for concluding that the petitioner's conduct was contemptuous and could not go unpunished.

█ Petitioner calls our attention to M.R.Crim.P. Rule 32(a) which reads, in part:

"* * * Before imposing sentence the court shall address the defendant personally and ask him if he desires to be heard prior to the imposition of sentence. The defendant may be heard personally or by counsel or both. Failure of the court to so address the defendant shall not constitute grounds for relief under Rule 35 (b) of these rules, unless the defendant shows that he has been prejudiced thereby."

Although this matter must go back for re-sentence where he will doubtless be offered opportunity for allocution this issue merits brief discussion. While the type of offense of which the petitioner was adjudged to be guilty is classified as criminal contempt committed in the presence of the Court, it seems clear that not all the procedural rules relating to the ordinary criminal offense are applicable. It is an offense sui generis. Cheff v. Schnachenberg, supra. For example, there is no right to notice, a written charge, hearing, and to present witnesses. However, more desirable practice would permit allocution in open court before sentence.

█ We do not find that petitioner was prejudiced. Counsel met with the Justice in chambers before going into Court the morning of July 7th. There petitioner urged upon the Court that a mistrial should

be ordered to protect his client from the effects of his conduct. He said, during their discussion:

> "I am responsible for it, there is no question about that. You may deal with me any way you should, I'm willing to accept it but I don't think my client should be penalized."
>
> \* \* \* \* \* \* \*
>
> "I regret that incident yesterday and again I say I'm willing to accept whatever you feel I deserve."
>
> \* \* \* \* \* \* \*
>
> "I don't feel instructions from the Court could correct the animosity that they [the jurors] must feel toward me."
>
> \* \* \* \* \* \* \*
>
> "I regret having said that."

This discussion between counsel and Court in chambers was an extended one. In our view the petitioner was fully heard in chambers, on the record, and there was no requirement that he be heard again in the courtroom. He had in effect acknowledged the contempt and expressed his regrets and he had indicated that he was willing to accept whatever punishment the Court felt it should give. Immediately after sentence petitioner was given an opportunity to speak and he did so at length acknowledging his bad conduct and offering his apologies to both the jury and the Court. Petitioner then requested permission to speak to the Court in chambers and there sought unsuccessfully to purge himself of the confinement part of the sentence. In our view the petitioner had adequate opportunity to be heard and was not prejudiced.

Petitioner also argues that the Presiding Justice's remarks in chambers following sentence demonstrates that he was prejudiced and that he considered matters not of his personal knowledge in arriving at his judgment of contempt.

> "MR. ALEXANDER: Judge, I openly ask you if there is any way I can perhaps purge myself of this confinement? It

obviously will work its hardship in terms of, you know, my practice and that sort of thing.

> "THE COURT: I'm afraid not, Grover. I am not very proud of myself for what I have done and it's the most difficult thing I have had to do in my life. I have made up my mind this is the only way I could bring to your attention what I think you have done. We have had some experience before but I have never had occasion to get upset. But I'm not the only one, and without attempting to justify anything I just say to you that your reputation with all of the judges, or most of the judges in this particular area makes this no particular surprise. I mean, I think you have had it coming.
>
> "MR. ALEXANDER: You really do.
>
> "THE COURT: If you didn't have it coming I wouldn't have done it to you."

The accusation which the petitioner made in open court was clearly contemptuous and we see nothing in the quoted remarks which suggests to us that the Justice found it so because he was already prejudiced against the petitioner.

## ABSENCE OF MITTIMUS

■ At the time the petitioner surrendered himself to the Sheriff on the afternoon of July 7th there was not in existence any written order of commitment or mittimus and none was prepared by the committing Justice until after petitioner had been released on bail pending his hearing on habeas corpus. Petitioner takes nothing by this point. There was no loss of jurisdiction by the Court. The record shows the Judge orally ordered the commitment and the order was correctly carried out.

> "It is the judgment of the court which authorizes detention. The mittimus is the evidence of the officer's authority. \* \* \* The judgment is the real thing, the precept is not. The important question on habeas corpus is: Is the prisoner in the custody where the judgment com-

manded him to be put? and not how he was taken into custody." Wallace v. White, 115 Me. 513, 521, 99 A. 452, 455 (1916). See also Stern v. Chandler, supra.

## DUE PROCESS—RULE 42(a)

Petitioner asserts that he has been denied due process of law because of the failure of the committing court to comply with what petitioner argues is required procedure.

M.R.Crim.P. Rule 42(a), provides:

"(a) Summary Disposition. A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record."

Section (b) states that all other contempts shall be determined only after notice and hearing. The Justice in this case made no certificate as such. He prepared an order reciting that the petitioner had "been adjudged in contempt of this court by his conduct in open court in the presence of this Court and Jury", stating the punishment which had been verbally imposed and ordering petitioner's commitment to the custody of the Sheriff.

■ The purpose of Rule 42(a) is to present to a reviewing court a full and clear statement of the facts out of which the contempt arose so that that court may determine whether the action of the committing court was within its jurisdiction and whether its action was just or arbitrary. People v. Longhran, 2 Ill.2d 258, 118 N.E.2d 310 (1954); In re Rotwein, 291 N.Y. 116, 51

N.E.2d 669 (1943); People v. Tavernier, 384 Ill. 388, 51 N.E.2d 528 (1943); Widger v. United States, 244 F.2d 103 (5 Cir., 1957). Here the order of the Presiding Justice states his conclusion but not the facts upon which his conclusion was based.

■ Although the record in this case includes the transcript of the entire proceedings in Doughty v. Anderson, in the trial of which case petitioner made the accusation of prejudice, which we have considered and found to be contemptuous, together with the discussion between counsel and the Court in chambers and the proceedings in the courtroom during which petitioner was adjudged to be in contempt and was sentenced, we can only infer that this accusation was the basis—and the only basis—of the judgment of the Presiding Justice.

We believe that due process necessitates a filing of the certificate referred to in Rule 42(a). The certificate need not be filed immediately, nor before sentence in every case, but only the filing of the certificate can establish a record of what facts the Justice found to be contemptuous and the basis for the sentence imposed.

We conclude that the matter must go back to the Superior Court where the same Justice shall file the required certificate and resentence petitioner.

Appeal sustained. Case ordered remanded to the Superior Court for Cumberland County where the Justice shall file the certificate provided for in M.R.Crim.P. Rule 42(a), and, upon notice to petitioner, shall have him brought before the same Justice in that Court for sentence.

TAPLEY and DUFRESNE, JJ., did not sit.