**F. Austin HARDING**

v.

**COMMISSIONER OF MARINE RESOURCES.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1985.

Decided May 30, 1986.

Frederick Newcomb, III (orally), Rockland, for plaintiff.

Jeffrey Pidot, Asst. Atty. Gen. (orally), Augusta, for Commissioner of Marine Resources.

Edward F. Bradley, Jr., Portland, for Great Eastern Mussel Farms, Inc., et al.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ., and WERNICK, A.R.J.

ROBERTS, Justice.

The commissioner of the Department of Marine Resources appeals from a judgment of the Superior Court, Knox County, vacating a series of aquaculture leases granted to Mike & Joe's Sea Farm, Inc. (Sea Farm) and Great Eastern Mussel Farms, Inc. (Great Eastern) pursuant to 12 M.R.S.A. § 6072 (1981 & Supp.1985).[1] The Superior Court vacated the leases due to the Department's failure to consider evidence of the impact of the proposed aquaculture project on the property values of F. Austin Harding (Harding), an intervenor in the proceedings. Because we agree with the Department that 12 M.R.S.A. § 6072 does not require consideration of the effect of the proposed aquaculture project on Harding's property values, we vacate the judgment of

---

1. 12 M.R.S.A. § 6072 (1981 & Supp.1985) provides in part:

    **1. Authority.** The commissioner may lease areas in, on and under the coastal waters *including the public lands beneath those waters* and portions of the intertidal zone for scientific research or for aquaculture of marine organisms. The commissioner may grant a lease to any person....

    ....

    **7. Decision.** The commissioner may grant the lease, if he is satisfied that the proposed project will not unreasonably interfere with the ingress and egress of riparian owners, navigation, fishing or other uses of the area and is not in conflict with applicable coastal zoning statutes or ordinances....

(Emphasis added.)

the Superior Court and determine that the leases should be issued to Sea Farm and Great Eastern consistent with the commissioner's original order.

## I.

In June of 1983 Sea Farm and Great Eastern filed a joint application to the Department of Marine Resources seeking a series of aquaculture leases in submerged land directly off the coast of Vinalhaven for the purpose of growing mussels. The tracts of land sought by the applicants totalled 50 acres and included 15 acres in Old Harbor and 35 acres in Crockett Cove.

In August of 1983 Harding requested intervenor status for himself as property owner and trustee of 140 acres of land adjacent to Crockett Cove alleging that the aquaculture leases, if granted, would adversely affect his property values. Although intervenor status was granted to Harding, the Department made it clear that he would not be permitted to submit testimony regarding alleged diminution of his property values as a result of the proposed aquaculture operations.

At the public hearing on the leases, the applicants testified that the project involved harvesting seed mussels from areas outside the proposed lease site and transferring these mussels to submerged land within the lease area at lower densities to encourage rapid growth for marketing. Both harvesting and seeding operations were to be conducted by means of a lobster boat. A 4½ foot chain sweep drag would be used to harvest the mussels from the seabed. No permanent surface or subsurface structures were to be employed in the operation, except four buoys to mark the lease site.

At the hearing Harding sought to present testimony concerning the effect of the proposed aquaculture operation on his property values. The deputy commissioner, however, refused to receive such evidence consistent with the Department's initial determination that Harding would be precluded from presenting such testimony.

Following the public hearing, the commissioner granted the leases and found that the proposed project fulfilled all the criteria set out in 12 M.R.S.A. § 6072(7) in that it (1) would not unreasonably interfere with the ingress or egress of any riparian owners, navigation, fishing or other uses of the area, and (2) would not conflict with shoreline zoning. The commissioner also reiterated in his decision that he did not consider the potential impact of the leases on individual upland property values to be a relevant decisional criterion under the aquaculture leasing statute.

Harding sought judicial review by the Superior Court pursuant to M.R.Civ.P. 80C alleging, *inter alia*, that the Department erred as a matter of law by denying him the opportunity to present evidence concerning the impact of the leases on the value of his property. Harding did not then, and does not now allege that the impact amounted to a taking of his property. Although it affirmed the Department's decision in all other respects, the Superior Court agreed with Harding and vacated the leases in light of the commissioner's exclusion of evidence relating to the effect of the project on Harding's property values. Although the remand was limited to the presentation of additional evidence rather than an entirely new hearing, the Superior Court did not retain jurisdiction. The commissioner appeals from that Superior Court judgment.

## II.

■ Because of the procedural posture of the case at bar, we first address the question whether to entertain this appeal. In ordinary circumstances we would decline to exercise our appellate jurisdiction because the order of remand is considered interlocutory and not final. *See Harris Baking Co. v. Maine Employment Security Commission*, 457 A.2d 427, 428 (Me. 1983). Contrary to the loose language of some of our opinions, *see, e.g., Town of Kittery v. White*, 415 A.2d 1087, 1089 (Me.

1980) (appeal dismissed for lack of jurisdiction because no final judgment), our final judgment rule is not jurisdictional but merely a prudential rule to avoid piecemeal review and promote judicial economy. *See Maine Central Railroad v. Bangor & Aroostook Railroad,* 395 A.2d 1107, 1113 n. 7 (Me.1978). *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice,* § 73.1 (2d ed. 1970 & Supp.1981). In *Bar Harbor Banking & Trust Co. v. Alexander,* 411 A.2d 74, 77 (Me.1980), we recognized the propriety of fashioning an exception when necessary to avoid undue disruption of administrative process. In the case before us the commissioner performs more than a simple adjudicative function; he is charged with administrative enforcement as well. Because of the impact of the Superior Court decision upon aquaculture leasing procedures and because that decision may otherwise escape appellate review, we determine that the case before us presents an appropriate occasion to apply the *Bar Harbor Banking* exception to the final judgment rule.

We recognize that by expanding the *Bar Harbor Banking* exception we aggravate the already difficult task of determining when a Superior Court decision relating to governmental action is ripe for appellate review. *Compare, e.g., Harris Baking,* 457 A.2d 427, *and Town of Pittsfield v. Chandler,* 457 A.2d 1122 (Me.1983) (Mem. Dec.) *with Chandler v. Town of Pittsfield,* 496 A.2d 1058 (Me.1985) *and Sanborn v. Town of Eliot,* 425 A.2d 629 (Me.1981). In an appropriate case, however, the Superior Court can avoid the uncertainty by expressly retaining jurisdiction of the case pending further administrative proceedings. *See Sanborn,* 425 A.2d at 631. Retaining jurisdiction may be particularly appropriate when the further administrative proceedings directly affect the substantive issues presented to the Superior Court and when the result will be a more comprehensible record for review by the Law Court. In the case before us, an administrative determination as to whether the leases adversely affect the plaintiff's property values will not resolve the substantive question.

### III.

Maine's aquaculture leasing statute provides a rather narrow list of factors that a commissioner must consider before granting a lease in submerged lands. This list does not include property value diminution among the criteria to be examined. Instead, before an aquaculture lease can be approved, the commissioner must ensure only that the proposed project does not unreasonably interfere with the ingress and egress of riparian owners, navigation, fishing, or other uses of the areas and is not in conflict with applicable coastal zoning laws. 12 M.R.S.A. § 6072(7).

Despite the fact that consideration of upland property values is not required by the plain language of section 6072(7), Harding argues that the stated condition of section 6072(7) that leases not "unreasonably interfere with ... other uses of the area" requires a commissioner to allow adjacent property owners to submit property devaluation evidence. We disagree.

Although an examination of the legislative history of the phrase "other uses of the area" provides little guidance, it is unlikely that the Legislature intended to infuse this phrase with property value concepts when such factors are already given separate consideration in the same sentence within the limitation that leases may not conflict with applicable coastal zoning laws. In fact, the prohibition that leases may not interfere with "other uses of the area" more likely is meant to protect lobstering, clamming, scalloping, swimming, mooring of boats and those other activities that traditionally take place in the areas where aquaculture is to transpire. As a result, we find that the department was correct in concluding that section 6072(7) on its face does not require consideration of the effect of aquaculture operations on upland property values.

In spite of the absence of express statutory language requiring the commis-

sioner to consider property value diminution, Harding argues alternatively that the so-called public trust doctrine compels consideration of this factor by implication. We also disagree with Harding on this score.

Maine law has long recognized that public rights inhere in submerged lands owned by the State and that the State must manage these lands for the benefit of the public. *Moor v. Veazie*, 32 Me. 343, 356 (1850); *Moulton v. Libbey*, 37 Me. 472, 485–87 (1854). In fact, individual Justices of the Supreme Judicial Court and the Legislature itself have acknowledged the existence of the so-called "public trust doctrine." *See Opinion of the Justices*, 437 A.2d 597 (Me.1981); 12 M.R.S.A. § 559(1) (1981). Despite the apparent presence of the doctrine in Maine law, however, there appears to be no authority for the proposition that private land values must be considered by the State before it can grant aquaculture leases in the State's submerged lands.

Historically, the public rights to be protected in management of submerged lands included navigation, fishing and fowling—common public uses. The Justices opined that the needs of a growing society may lead to a wider variety of public uses to be protected by the doctrine. *Opinion of the Justices*, 437 A.2d at 607. We note the familiar rule that an advisory opinion binds neither the Court nor the individual Justices who gave the opinion. *Martin v. Maine Savings Bank*, 154 Me. 259, 269, 147 A.2d 131, 137 (1958). We need not decide, however, the precise scope of the public trust doctrine nor whether the doctrine achieves constitutional status under Me. Const. art. IV, pt. 3, § 1 as intimated by the Justices. *Opinion of the Justices*, 437 A.2d at 606, 607. Even if we were to adopt a more expansive view of the doctrine, we are unpersuaded that public trust considerations require inclusion of individual private property values in the legislative formulation. Moreover, to the extent that individual property values have an effect upon the "public interest" they are protected by compliance with applicable zoning restrictions.

 As a result, the Department was correct in refusing to consider individual property values in its determination. Consequently, the judgment of the Superior Court must be vacated, and the decision of the commissioner to grant the leases should be affirmed.

The entry is:

Judgment vacated.

Remanded with direction to affirm the decision of the Commissioner of the Department of Marine Resources.

All concurring.