**INTERNATIONAL PAPER COMPANY**

v.

**UNITED PAPERWORKERS INTERNA-
TIONAL UNION, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 6, 1988.
Decided Dec. 13, 1988.

S. Mason Pratt, Jr. (orally), James R. Erwin, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Patrick N. McTeague (orally), McTeague, Higbee, Libner, Reitman, Macadam & Case, Topsham, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

Defendants, United Paperworkers International Union (UPIU), Local 14 of the UPIU, Local 246 of the International Brotherhood of Firemen and Oilers (IBF & O) (hereinafter collectively the "Unions") and union members Alan Farrington and Arthur Storer, appeal from an amended order of the Superior Court (Franklin County; *Brody, C.J.*), finding them in civil contempt for violating the court's preliminary injunction that prohibited certain conduct during a labor dispute with plaintiff, International Paper Company (IP). The Unions were fined $10,000 and the individual union members were given an opportunity to purge themselves of contempt by complying with the preliminary injunction and order. IP cross-appeals from the order of the Superior Court finding IP in contempt for violating the preliminary injunction. We reject IP's argument that the defendants' appeal is barred by the final judgment rule, and that our authority to review the proceedings below is otherwise limited by 14 M.R.S.A. § 252 (Supp.1987) to questions of jurisdiction. We conclude that the Unions' appeal of the order imposing the $10,000 fine already paid to IP and distributed to third parties is moot, we vacate the Storer adjudication, and affirm the order below in all other respects.

On June 16, 1987, the UPIU and IBF & O went on strike at IP's Androscoggin paper mill (hereinafter "Mill") in Jay.[1] The strikers set up picket lines around the Mill and IP soon began hiring replacement workers. On June 29, 1987, the Superior Court granted IP's request for a temporary restraining order against the Unions and their members, enjoining conduct that interfered with free passage to and from the Mill, and enjoining other unlawful conduct in connection with the strike. The Superior Court later issued a preliminary injunction that prohibited, *inter alia*, the Unions and their members from blocking traffic on access roads to the Mill, establishing more than a specified number of pickets at entrances to the Mill, carrying firearms in the vicinity of the Mill and assaulting, threatening, following or otherwise harassing employees, prospective employees, customers, suppliers and others wishing to do business with IP. The preliminary injunction also prohibited IP, its employees and prospective employees from threatening, assaulting or harassing the defendants in connection with their strike activities, carrying firearms in the vicinity of the Mill and driving in a dangerous manner through any entrance to the Mill.

As the strike entered its second month and as tensions between IP and the Unions mounted, IP filed a verified complaint, later amended, seeking orders of civil contempt against the Unions,[2] two union officers and several individual union members. IP also applied for an order to show cause for civil and criminal contempt against the same entities and individuals. The Unions also sought civil contempt and criminal contempt orders and supplemental relief

---

1. The strike, the longest in modern Maine history, continued after oral argument, but concluded before this opinion was adopted. The end of the strike does not affect the issues raised by this appeal and cross-appeal.

2. UPIU, Local 14 of the UPIU, IBF & O and Local 246 of the IBF & O were all named as defendants in the complaint.

against IP and various IP employees. No order to show cause or notice of any kind under M.R.Crim.P. 42 was issued by the court for criminal contempt.

After a hearing on the requests for civil contempt orders, the Superior Court issued an order in November of 1987 with respect to the civil contempt charges against IP, the IP employees, the Unions and certain union members.[3] The complaints against the IP employees were either voluntarily dismissed by the Unions or were found by the court to be without sufficient merit to justify a finding of contempt. The court found IP in civil contempt for several "relatively minor" violations of the court's preliminary injunction and ordered IP to inform employees and prospective employees of the requirements of the injunction and to advise its employees that the company would not tolerate any violations of the injunction.

The court, in its amended order, found the UPIU, Local 14 of the UPIU, Local 246 of the IBF & O, and four individual union members, including Farrington and Storer, in civil contempt of the preliminary injunction. The individuals were provided with the opportunity to purge themselves of contempt by complying with the injunction and order. The allegations of civil contempt against the remaining individually-named union members, with one exception, a case separated at trial, were dismissed, and no findings were made or sanctions imposed against the IBF & O. The hearing justice ordered the Unions to "discourage their members from the types of [strike-related] confrontations which have occurred in the past" and fined the Unions $10,000, ordering the money to be paid directly to IP for distribution as restitution to third-party victims of strike-related property damage. The Unions, without seeking a stay of the fine, paid the $10,000 fine to IP and ultimately agreed to a payment schedule prepared by IP for payment of the money to third parties. The hearing justice denied the Unions' motion for a new hearing. The

Unions, Farrington and Storer appealed and IP later cross-appealed.

## I.

IP argues that the order finding IP and the Unions in civil contempt does not amount to a final judgment because it does not resolve or dispose of the criminal contempt charges arising out of the same series of events that led to the civil contempt findings.[4] The final judgment rule applies to orders issued as a result of contempt proceedings, *see Planning Bd. v. Michaud*, 435 A.2d 742, 743 (Me.1981), and we conclude that the order appealed from here constitutes a final judgment.

■ In order for an appeal to be cognizable, it must be from a final judgment and not be interlocutory. *In re Erica B.*, 520 A.2d 342, 343 (Me.1987). *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 173.5, at 490–91 (2d ed. 1970). An appeal is final, as opposed to interlocutory, when "1) the trial court's action fully decides and disposes of the whole matter leaving nothing further for the consideration and judgment of the trial court, and 2) no subsequent proceedings in the case will render the appellate court's decision immaterial." *Erica B.*, 520 A.2d at 343–44; *Allen v. Cole Realty, Inc.*, 325 A.2d 19, 21 (Me. 1974).

■ Although civil and criminal contempt orders were sought by IP, the proceedings for civil and criminal contempt are fundamentally different. A civil contempt proceeding is a remedial action brought to benefit another party. *Wells v. State*, 474 A.2d 846, 850 (Me.1984). An essential element of the civil contempt order is the opportunity to purge oneself of contempt by satisfying the court order or judgment not complied with previously. *Id.; Meyer v. Meyer*, 414 A.2d 236, 239 (Me.1980).

■ The purpose of criminal contempt, in contrast, is to punish an affront to the dignity and authority of the court. The sanctions arising from criminal contempt are determinate and there is no right to

---

**3.** The Superior Court issued amended orders in December of 1987 and January of 1988.

**4.** The Unions do not raise the final judgment issue with respect to IP's cross-appeal.

purge. *Wells*, 474 A.2d at 851. In addition, in criminal contempt proceedings, there are constitutional implications not present in civil contempt proceedings. *Bloom v. Illinois*, 391 U.S. 194, 201–02, 88 S.Ct. 1477, 1481–82, 20 L.Ed.2d 522 (1968); 2 Cluchey & Seitzinger, *Maine Criminal Practice* § 42.5, at 42–8—42–10 (1987); Comment, *Criminal Contempt in Maine: Constitutionally Protected or Neglected?* 34 Me.L.Rev. 407 (1982).

■ The procedure for criminal contempt is governed by M.R.Crim.P. 42. Prosecution for criminal contempt cannot commence without the court issuing the required notice. A party litigant may only request that criminal contempt proceedings be initiated. Except for conduct occurring in the presence of the court, governed by M.R.Crim.P. 42(a), a criminal contempt proceeding is initiated by the court giving the proper notice, either orally in open court, or by an order to show cause or an order of arrest. M.R.Crim.P. 42(b).[5] No such notice was given here, and no criminal contempt proceeding was initiated, and none remains pending for imminent decision. Moreover, nothing in the record indicates that initiation of a criminal contempt proceeding is contemplated or at all likely. Nothing remains pending in the Superior Court except a remote possibility that a criminal contempt proceeding, different in standard of proof, procedural safeguards and available sanctions, may be initiated. Even if the court should subsequently initiate a criminal contempt proceeding, be-

cause of the different standard of proof required for criminal contempt, our decision in the instant appeal will not be rendered immaterial. *Erica B.*, 520 A.2d at 344. To deny the individual defendants their right to appeal the civil contempt orders because the trial court did not initiate criminal contempt proceedings would be to apply inappropriately the final judgment rule to deny defendants their right to appeal the adjudication of civil contempt.

## II.

■ IP further contends that our review of the Superior Court order is restricted by 14 M.R.S.A. § 252 (Supp.1987) to the limited question of jurisdiction.[6] Because the apparent restriction on our appellate jurisdiction in section 252 is inconsistent with the Law Court's comprehensive appellate jurisdiction as set out in the statutes, and with the rules of procedure governing civil appeals, we conclude that our review of appeals in civil contempt matters is not so limited.

4 M.R.S.A. § 57 (Supp.1988) grants to the Law Court jurisdiction to hear cases such as the instant case, and we have described that jurisdiction as "comprehensive and unrestricted." *Dow v. State*, 275 A.2d 815, 824 (Me.1971). Moreover, 14 M.R.S.A. § 1851 (1980) provides, in part, that "[i]n any civil case any party aggrieved by any judgment, ruling or order may appeal therefrom to the law court...." Before amendments to 4 M.R.S.A. § 57 made the

5. M.R.Crim.P. 42(b) provides as follows:
 **(b) Disposition upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the justice in open court in the presence of the person charged or, on application of an attorney for the State or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The person charged is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from pre-

siding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

6. 14 M.R.S.A. § 252 provides in relevant part, as follows:
 Whenever a party ... complains in writing and under oath that the process, decree or order of court, which is not ... for the payment of money only, has been disregarded or disobeyed by any person, summary process shall issue by order of any justice, requiring such person to appear on a day certain and show cause why he should not be adjudged *guilty of contempt*.... No appeal lies from any order or decree for such punishment, save upon questions of jurisdiction....

Law Court's appellate jurisdiction "comprehensive and unrestricted," *see Dow*, 275 A.2d at 824, we reexamined the common law rule stated in *Cheney v. Richards*, 130 Me. 288, 292–93, 155 A. 642 (1931), that limited review of criminal contempt to questions of jurisdiction. *Stern v. Chandler*, 153 Me. 62, 71, 134 A.2d 550 (1957). In *Stern*, we concluded that the common law limitation on review of criminal contempt was "too harsh" and afforded insufficient protection against the possible abuse of a trial court's power to punish contempt. *Id.* Since the changes to 4 M.R. S.A. § 57 and the adoption of the Maine Rules of Civil Procedure, which govern appeals to the Law Court, *see* M.R.Civ.P. 73, we have reviewed civil contempt appeals on other than jurisdictional grounds despite the limiting language of 14 M.R.S.A. § 252. *Inhabitants of Town of Brunswick v. Campbell*, 438 A.2d 1285, 1287 (Me.1982) (review of wording of injunction under which defendants were found in contempt); *Banker v. Bath Iron Works Corp.*, 507 A.2d 602, 604–06 (Me.1986) (review of injunction under which defendants were found in contempt). *See also City of S. Portland v. Pine State By–Prods., Inc.*, 306 A.2d 1, 4–5 (Me.1973) (review on the merits of judgment for defendant in contempt action).

Our review of nonjurisdictional issues in civil contempt appeals is consistent with our broad statutory appellate authority and with the Maine Rules of Civil Procedure which govern all civil appeals to the Law Court and contain no restriction limiting the Law Court's consideration to questions of jurisdiction in appeals such as the instant one. M.R.Civ.P. 73.[7] Appeals in civil contempt cases are not limited to questions of jurisdiction. Contemnors, such as the individual defendants here, are thus afforded protection from possible abuse of the trial court's civil contempt power.

### III.

 The Superior Court amended order found the Unions in civil contempt for vio-

lating the court's preliminary injunction and fined them $10,000. The money was to be paid directly to IP for distribution to third-party victims of strike-related property damage. The Superior Court amended order provided in relevant part as follows:

> The unions, jointly and severally, shall pay to IP the sum of $10,000 as restitution to the IP employees and agents who have suffered monetary damages as a result of prohibited activity. IP shall be responsible for distributing the funds and to this end must establish its own internal process to verify damages. The damage and the amounts shall be investigated, verified and documented by the plaintiff and a summary report shall be filed with the court. The balance remaining shall be held in escrow pending further order of the court.

Without first seeking a stay of the order or otherwise challenging the imposition of the fine prior to this appeal, the Unions paid the money to IP as ordered. The money was ultimately distributed to third-party victims of strike-related property damage pursuant to a payment schedule prepared by IP and approved by the Unions. We agree with IP that the Unions' appeal from that order is moot.

 The Law Court will not consider moot questions or abstract propositions. *Hazzard v. Westview Golf Club, Inc.*, 217 A.2d 217, 224 (Me.1966). An action is moot when there are insufficient practical effects that would flow from appellate review of the dispute. *Your Home, Inc. v. City of Portland*, 501 A.2d 1300, 1302 (Me. 1985). We have repeatedly declined to decide issues that are rendered moot because they have lost their " 'controversial vitality.' " *National Council on Compensation Ins. v. Superintendent of Ins.*, 538 A.2d 759, 762 (Me.1988) (quoting *Good Will Home Ass'n v. Erwin*, 285 A.2d 374, 379 (Me.1971)); *State v. Gleason*, 404 A.2d 573, 578 (Me.1979). A dispute loses its contro-

---

7. Similarly, 4 M.R.S.A. § 57 grants the Law Court jurisdiction to hear appeals of criminal cases, *Dow v. State*, 275 A.2d 815, 824 (Me. 1971), and the Maine Rules of Criminal Procedure govern those appeals. *Id.; Alexander v. Sharpe*, 245 A.2d 279, 282 (Me.1968); M.R. Crim.P. 37.

versial vitality when a decision by this court would not provide an appellant any real or effective relief. *Knowlton v. Rhodes*, 413 A.2d 546, 548 (Me.1980).

■ The Unions complied with the contempt order when they paid the $10,000 fine and, without seeking a stay, agreed to the distribution of the money to third-party victims of strike-related property damage. When a contemnor complies with a contempt order and pays an amount due or otherwise purges himself of contempt, any appeal from the finding of contempt is moot. *Taylor v. United States*, 410 F.2d 392, 392 (5th Cir.1969); *Finn v. Finn*, 517 A.2d 317, 319 n. 1 (Me.1986); Annotation, *Appealability of Contempt Adjudication or Conviction*, 33 A.L.R.3d 448, 573 (1970 & Supp.1988). *See generally* 17 C.J.S. *Contempt* § 124(1) (1963 & Supp.1985). The appeal is moot because any action taken by an appellate court would not afford the appellant any real or effective relief. *Graffam v. Wray*, 437 A.2d 627, 631 (Me. 1981); *Knowlton*, 413 A.2d at 548. *See also Your Home, Inc.*, 501 A.2d at 1302. This is especially true here when compliance with the contempt order involved the transfer of money for the benefit and use of third parties, *see, e.g., In re Charlton*, 708 F.2d 1449, 1454–55 (9th Cir.1983) (disputed property sold to good-faith purchaser); *Cote v. Zoning Bd. of Appeals for the City of Bangor*, 398 A.2d 419, 420 (Me. 1979) (disputed property conveyed to *bona fide* third party), and its retrieval would be impractical if not impossible. Since there is no relief of practical consequence that we can afford the Unions, their appeal must be dismissed for mootness.

#### IV.

The Superior Court found that defendant Storer had violated the injunction by jumping on and striking a motor vehicle as it left the Mill on August 6, 1987, and found Farrington in contempt for a similar violation on July 30, 1987. In its amended order, the court found both union members in civil contempt and gave them the opportunity to purge themselves of the contempt by complying with the injunction.

■ A review of the record discloses, and IP agrees, that there is insufficient evidence to support the court's finding that Storer was the person who jumped on and struck a vehicle on August 6, and the court's contempt adjudication of Storer is clearly erroneous. As to Farrington, there is evidence in the record to support the court's finding that Farrington did strike a vehicle as it left the Mill on July 30. A finding of fact by the Superior Court will not be set aside unless it is "clearly erroneous." *State ex rel. Tierney v. Ford Motor Co.*, 436 A.2d 866, 876 (Me.1981); *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981). A finding of fact is clearly erroneous only when lacking any competent support in the record. *Chase v. Burrell*, 474 A.2d 180, 182 (Me.1984). We will not disturb the adjudication of civil contempt as to Farrington.

#### V.

The other issues raised by the defendants in the appeal and the issues raised in the cross-appeal are without merit.

The entry is:

Appeal of the United Paperworkers International Union (UPIU), Local 14 of the UPIU, and Local 246 of the International Brotherhood of Firemen and Oilers (IBF & O) is dismissed.

Judgment of the Superior Court is modified so as to vacate the adjudication of contempt against Arthur Storer, and, as modified, is affirmed.

All concurring.