James FICHTER et al.

v.

BOARD OF ENVIRONMENTAL
PROTECTION.

Supreme Judicial Court of Maine.

Argued Jan. 24, 1992.
Decided Feb. 26, 1992.

Lewis Seiler (orally), Cincinnati, Ohio, Timothy Vogel, Vogel & Toole, Portland, for plaintiffs.

Dennis Harnish, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

In this Rule 80C proceeding, the Superior Court (York County, *Fritzsche, J.*) reviewed the denial by the Board of Environmental Protection (BEP) of the application of James and Nancy Fichter for a permit to build a house on their oceanfront lot on Horseshoe Cove in Biddeford. Ruling that the BEP was bound by constitution and statute to give the Fichters an opportunity to cross-examine adverse witnesses and to present rebuttal evidence, the court vacated the BEP's denial of the Fichters' application and remanded the matter to the BEP for a full adjudicatory hearing. The BEP appeals that ruling and the Fichters cross-appeal, contending that the BEP's denial of their permit application was in any event unsupported by substantial evidence. The Fichters also have filed a motion to dismiss the BEP's appeal on the grounds that the BEP's filing within the prescribed appeal period of only a facsimile copy of its notice of appeal failed to make the appeal timely, and further that the BEP's appeal is interlocutory and barred by the final judgment rule. Rejecting both of the grounds of the Fichters' motion to dismiss, we rule that the procedures followed by the BEP in deciding the Fichters' application did not violate any of their constitutional or statutory rights. Thus, we vacate the judgment of the Superior Court. Because the evidence of record before the BEP amply supported its denial of the Fichters' application, we remand for entry of a judgment affirming the BEP's decision.

The Fichters' vacant lot adjacent to Horseshoe Cove in Biddeford lies along a narrow sand dune between a salt marsh and the ocean. In March 1988 the Fichters filed with the Department of Environmental Protection an application for a permit to construct a residence on their lot. The staff of both the Department and the Maine Geological Survey determined that the Fichters' house would be located on a "frontal sand dune." That term is defined by the Department's Coastal Sand Dune Rules, ch. 355, § 1(O) as "the area consisting of the most seaward ridge of sand and includes former frontal dune areas modified by development." Those rules prohibit the building of new structures "on or seaward of a frontal dune," *id.* at § 3(B)(2)(a)(ii), and accordingly the Fichters applied to the Department for a variance. The Fichters are entitled to the requested variance only if they show by clear and convincing evidence, *inter alia,* that "even if the proposed variance is granted, all other provisions of [the Coastal Sand Dune Rules] and all statutory criteria set forth in 38 M.R.S.A. § 472(2)[1] will be met." *Id.* at § 4(I)(2). On October 23, 1989, on the ground that the Fichters had failed to satis-

1. The Alteration of Coastal Wetlands Act, 38 M.R.S.A. §§ 471–478, was repealed by P.L.1987, ch. 809, § 1, and was replaced by the Protection of Natural Resources Act, 38 M.R.S.A. §§ 480–A to 480–S (1989 & Supp.1991). Section 480–D of that Act retains the same criteria that were contained in former section 474.

fy two of the criteria set forth in the statute, the Department denied their application for a variance, saying:

> The proposed activity will unreasonably cause the flooding of the alteration area in that future storm wave overwash will result in damage to the building.

> The proposed activity will unreasonably interfere with the natural supply and movement of sand within the sand dune system and will unreasonably increase the erosion hazard to the sand dune system, in that the project is located on the frontal dune which is a storage area of sand for the overall sand dune system. This sand will be redistributed during future storm activity. Construction of a house at this site will restrict this supply and movement of sand.

The Fichters appealed the Department's adverse decision to the BEP. Following its usual practice in such matters, the BEP considered the Fichters' appeal during its regularly scheduled biweekly meeting held on February 14, 1990. At the meeting the Fichters and the Department presented their evidence in turn. The BEP members questioned the witnesses, but neither of the parties was permitted to cross-examine the other's witnesses. At the conclusion of the meeting, the BEP affirmed the Department's denial of the permit.

On the Fichters' request, the BEP reconsidered the Fichters' appeal at its regularly scheduled meeting held on June 27, 1990. Although the Fichters in their request for reconsideration expressly asked to be allowed to cross-examine adverse witnesses, the BEP did not allow them to do so. The BEP did, however, let them rebut any evidence the Department had presented at the February 14 meeting. At the meeting's conclusion, the BEP again affirmed the Department's denial of the Fichters' application for a sand dune permit. In the Rule 80C proceeding that ensued, the Superior Court on September 18, 1991, remanded the Fichters' case to the BEP for a full adjudicatory hearing with rights of cross-examination and rebuttal.

## I.

### *Adequacy of the Fax Copy of the BEP's Notice of Appeal*

■ The period for the BEP to appeal the Superior Court judgment expired on Friday, October 18, 1991—30 days after entry of that judgment. *See* M.R.Civ.P. 73(a). The BEP did not file in the Superior Court clerk's office in York County its notice of appeal, signed by the Assistant Attorney General representing the BEP, until Monday, October 21, 1991—three days after expiration of the appeal period. The BEP nonetheless argues that it filed its notice of appeal in time because on Friday, October 18, a non-lawyer from the Department's Portland office hand-delivered to the York County clerk's office a copy of the BEP's original notice of appeal that had been transmitted to him from Augusta by facsimile machine (fax).

The fax copy of the BEP's notice of appeal does not satisfy the requirements of the rules. M.R.Civ.P. 73(b) states that: "The notice of appeal is a pleading for purpose of Rule 11." M.R.Civ.P. 11 in turn states that: "Every pleading and motion of a party represented by an attorney shall be signed by at least one attorney of record...." The fax copy of the BEP's notice of appeal that was hand-delivered is no better than a fax copy transmitted by fax directly from Augusta to the clerk's office. Because a fax copy does not bear the required original signature of an attorney of record, the existing rules do not authorize the filing of a notice of appeal, or any other pleading, by fax.

■ What then is the consequence here of the fact that the only filing the BEP made within the time limits of Rule 73(a) was a fax filing? Our answer must take into account the present circumstances that the validity of fax filings is a question of first impression in Maine, that on its merits the BEP's appeal raises an issue of considerable public importance in the administration and operations of a busy state agency, and that no one has been misled or prejudiced in the slightest by the BEP's faxed notice of appeal. M.R.Civ.P. 1 instructs us to construe the Rules of Civil Procedure

"to secure the just ... determination of every action." That instruction is best followed by not applying our freshly announced decision to the fax filing in this appeal. Here, for the purposes of this appeal only, we will treat the fax copy filed on Friday, October 18, 1991, as the equivalent of an original signed notice of appeal. We deny the Fichters' motion to dismiss the BEP's appeal. We emphasize, however, that the same dispensation will not be accorded pleadings filed by fax after this date. Hereafter we will not accept the fax filing of a notice of appeal or any other pleading, until such time as the Supreme Judicial Court, with the assistance of its advisory rules committees, has had an opportunity to consider fully the problems incident to the use of fax in the courts and in the exercise of its rulemaking power has expressly authorized that use subject to appropriate safeguards.

## II.

### Final Judgment Rule

■ Although this appeal is clearly interlocutory,[2] it presents a set of circumstances that we have at least twice before recognized to justify our making an exception to the final judgment rule. In *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74 (Me.1980), we fashioned a pragmatic exception to the final judgment rule for a temporary restraining order issued by the Superior Court that interfered "with apparently legitimate executive department activity" and disrupted the "administrative process." *Id.* at 77. In *Harding v. Commissioner of Marine Resources*, 510 A.2d 533 (Me.1986), we extended the pragmatic exception fashioned in *Alexander* to a Superior Court order that vacated an aquaculture lease because that order interfered with legitimate administrative procedure and because the issue might otherwise escape appellate review.

That same situation exists here. First, the BEP takes its present appeal from an interlocutory ruling of the Superior Court that has the potential of interfering severe-

ly with the administrative procedures of that agency. The expense and delay involved in providing a permit applicant a full-blown adversarial hearing with cross-examination and rebuttal are substantial. That expense and delay alone amount to a disruption of the administrative process, even if the court's ruling is extended no further than the case at bar, and of course it cannot be so limited. Furthermore, it is unlikely that the BEP can ever obtain appellate review of the Superior Court's procedural ruling if we do not entertain its appeal now. If after the hearing with full cross-examination and rebuttal the BEP grants the Fichters a sand dune permit, the BEP is not an aggrieved party entitled to appeal its own order. On the other hand, if after the full hearing the BEP again denies the Fichters' application, any challenge to the Superior Court's ruling that the BEP might try to raise at that time on a cross-appeal would appear to be moot because the BEP would already have held the full hearing ordered by the court and there would be no meaningful relief the BEP could then be given. *See International Paper Co. v. United Paperworkers Int'l Union*, 551 A.2d 1356, 1360–61 (Me.1988). In the circumstances of the BEP's present interlocutory appeal, we find it inappropriate to apply our court-made final judgment rule.

## III.

### Adequacy of the BEP's Administrative Procedures

■ On the merits of BEP's appeal we determine that there is no state or federal constitutional due process requirement that the BEP, in considering the Fichters' application for a sand dune permit, provide them with an adjudicatory hearing complete with cross-examination and rebuttal. State and federal due process requirements are identical. *See Penobscot Area Housing Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24 n. 9 (Me.1981). Those requirements are flexible and entail no specified form or proce-

---

**2.** The Superior Court retained jurisdiction of this case pending the BEP's decision on remand,

a procedure approved in *Sanborn v. Town of Eliot*, 425 A.2d 629, 631 (Me.1981).

dure, *see Giberson v. Quinn*, 445 A.2d 1007, 1008 (Me.1982). Rather, "[w]hat process is due will vary from case to case ... to assure the basic fairness of each particular action according to its circumstances." *Secure Environments, Inc. v. Town of Norridgewock*, 544 A.2d 319, 324–25 (Me.1988) (quotations omitted). The Supreme Court has made clear that in the administrative arena procedure can be adjusted to reflect the competing interests involved and the context of the hearing. *See Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). An administrative agency often acts in a quasi-legislative role. The BEP acts in just such a capacity when it determines whether the Department has appropriately applied legislative guidelines in granting or denying applications for sand dune permits. The narrow question before us, which we answer in the negative, is whether it is necessary to import into that quasi-legislative process all those safeguards of a court proceeding in order to meet the requirements of due process.

In answering that question, we must determine whether the procedures followed by the BEP in denying the Fichters' permit application struck a fair balance between the competing interests of the Fichters and the State. *See Secure Environments, Inc.*, 544 A.2d at 325. The test we use in striking that balance was announced by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*See also Porter v. Hoffman*, 592 A.2d 482, 487 (Me.1991) (applies *Eldridge* factors to due process challenge of adoption proceedings); *In re Charles Jason R., Jr.*, 572 A.2d 1080, 1081 (Me.1990) (applies *Eldridge* factors to challenged use of hearsay statements in child protection proceedings). Explaining the nature of its balancing test, the Court in *Eldridge* continued:

> [M]ore is implicated in cases of this type than ad hoc weighing of fiscal and administrative burdens against the interest of a particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts. The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.

*Mathews v. Eldridge*, 424 U.S. at 348, 96 S.Ct. at 909 (quotations omitted).

Our analysis begins with the Fichters' private interest affected by the BEP's denial of their permit. Without question, the Fichters have a significant private interest in the results of the BEP proceeding because without a sand dune permit their land will lose much of its economic value. Their interest in the full economic value of their land, however, is offset by the third *Eldridge* factor, the administrative burden to the BEP of providing cross-examination and rebuttal rights to permit applicants. As the Superior Court stated, the offsetting "government[al] interest is also substantial as additional time and expense will be added in a time of severe financial restriction. If hearings with cross-examination were routinely available the effect on the BEP and its need for substantial, additional funds could be very significant." We conclude that the BEP's interest in

being free from the requirement of a full court-type hearing outweighs the Fichters' private interest.

The remaining *Eldridge* factor, which considers "the probable value, if any, of additional or substitute procedural safeguards," completes our *Eldridge* analysis and does not alter our decision in the BEP's favor. The second factor, stated in other words, considers the "risk of error created by the State's chosen procedure." *In re Charles Jason R., Jr.,* 572 A.2d at 1081. The Fichters not only were afforded an appeal before the BEP, during which the BEP received their evidence, but also at the meeting that reconsidered their application they were expressly told that they could rebut any adverse evidence presented previously. At both meetings, the Fichters were provided a full opportunity to place before the BEP all the evidence they had. The Fichters availed themselves of that opportunity and presented evidence to contradict that of the Department. The BEP certainly had a full record on which to make its determination. Under the procedures followed in this case, the Fichters had ample opportunity to present evidence both in support of their application for a sand dune permit and in rebuttal to any contrary evidence. The additional tools of cross-examination, and of immediate rebuttal at the first meeting, would have provided the Fichters little if any help in obtaining a sand dune permit. The risk of erroneous deprivation in the circumstances of this case was slight.

█ The Superior Court, in ruling that the Fichters must be given a full court-type hearing complete with cross-examination and rebuttal, relied alternatively upon the statutory requirement, 38 M.R.S.A. § 345–A(2) (Supp.1991), that BEP "hearings" be conducted in accordance with the procedural requirements of the Maine Administrative Procedure Act, which include recognition of the right to cross-examine.[3] Contrary to the label that the Superior Court put on the two regular biweekly meetings of the BEP at which it considered and reconsidered the Fichters' appeal, those meetings are not "hearings" within the meaning of 38 M.R.S.A. § 345–A(2). Thus, the statutory procedures required by the Maine Administrative Procedure Act were not implicated in the circumstances of this case.

## IV.

### *Sufficiency of the Evidence*

█ Before the BEP the Fichters had the burden of proving that they had satisfied the criteria for a sand dune alteration permit. *See Bruk v. Town of Georgetown,* 436 A.2d 894, 898 (Me.1981). "[T]o prevail on appeal [from the BEP] the [Fichters] must show not only that [the BEP's] findings of adverse consequences are unsupported by record evidence, but also that the record compels contrary findings." *Grant's Farm Assoc., Inc. v. Town of Kittery,* 554 A.2d 799, 801 (Me.1989) (citing *Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983)). Plainly the record does not compel the findings that the site of the proposed residence would not be on a frontal dune and that by no reasonable expectation would the proposed residence be damaged within the next 100 years. On the contrary, substantial evidence in the record supported the BEP's denial of the Fichters' application.

The entry is:

Judgment of the Superior Court vacated. Remanded for entry of judgment affirming the permit denial by the Board of Environmental Protection.

All concurring.

---

3. *See* 5 M.R.S.A. § 9056(2) (1989).