1998 ME 27

**STATE of Maine**

v.

**Norman DICKINSON.**

Supreme Judicial Court of Maine.

Argued Dec. 4, 1997.
Decided Feb. 9, 1998.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

Zbigniew J. Kurlanski, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Pursuant to M.R.Crim. P. 37C, Norman Dickinson appeals from an order entered in the Superior Court (Cumberland County, *Saufley, J.*) denying his motion, filed pursuant to M.R.Crim. P. 35(a), for a correction of his sentence.[1] Dickinson challenges the legality an order amending the conditions of his probation to permit his probation officer to require Dickinson to reside at a supervised community confinement center on a short-term basis, while a suitable long-term residence was located. Because Dickinson's probation has been revoked, the issue presented by his appeal is moot and we decline to address it.

[¶ 2] In 1989, following the entry of guilty pleas to robbery (Class A), 17–A M.R.S.A. § 651(1) (1983), kidnapping (Class A), *id.* § 301(1) (1983), and two counts of criminal threatening with a dangerous weapon (Class C), *id.* §§ 209, 1252 (1983 & Supp.1997), Dickinson received a twenty-year sentence on the robbery and kidnapping charges, with all but ten years suspended, followed by five years of probation.[2] The conditions of probation imposed by the court were stringent, including requirements that Dickinson's probation officer approve his residence; that Dickinson not change his residence without the prior approval of his probation officer; and that Dickinson remain at his residence except when his probation officer approved, in advance, travel to and from specific locations for specific purposes.[3]

[¶ 3] On January 24, 1997, Dickinson, having served the unsuspended portion of his sentence, was released from the Maine Correctional Institute at Warren and began serving his term of probation. Because Dickinson's probation officer, Peter Deane, had been unable to locate a suitable residence for him, Dickinson was placed in a short-term crisis shelter in Portland.

[¶ 4] On January 29, the Division of Community Corrections moved to amend the conditions of Dickinson's probation so that he could be required to reside at the Bangor Pre–Release Center (BPRC), while his probation officer located an acceptable long-term residence. At a hearing on the motion that day, Deane testified that Dickinson would be required to leave the shelter at 5:00 p.m. and that he had been unable to arrange an alternate residence. Finding that the original conditions of probation contemplated that Dickinson would have a specified place to

---

1. Rule 35(a) provides: "On motion of the defendant or the attorney for the state, or on the court's own motion, made within one year after a sentence is imposed, the justice or judge who imposed sentence may correct an illegal sentence or a sentence imposed in an illegal manner." Rule 37C sets forth the procedures by which a defendant may appeal from an adverse ruling on a Rule 35 motion.

2. Dickinson also received a concurrent five-year sentence on the criminal threatening charge.

3. Pursuant to M.R.Crim. P. 40(a) and 15 M.R.S.A. §§ 2151–2157 (Supp.1997), Dickinson appealed his sentence. For reasons unrelated to the conditions of probation, the sentence was vacated. *See State v. Dickinson,* 662 A.2d 202 (Me.1995). On remand, the Superior Court (*Cole, J.*) imposed the same sentence and virtually identical conditions of probation.

live, the court granted the motion and amended the conditions as requested.[4]

[¶ 5] Pursuant to M.R.Crim. P. 35(a), Dickinson moved to correct the sentence, contending that the amendment violated his State and Federal Constitutional rights. At a hearing on the motion, a probation officer testified that the BPRC was not willing to accept Dickinson as a resident. Dickinson's motion was denied. He then filed a notice of appeal and a memorandum in support of the issuance of a certificate of probable cause. *See* M.R.Crim. P. 37C(a), (d). On May 27, 1997, we issued an order granting the certificate. *See* M.R.Crim. P. 37C(i).

[¶ 6] Between July 9 and August 12, 1997, the Division of Community Corrections moved to revoke Dickinson's probation on three separate occasions. The first motion alleged that Dickinson exposed himself to a female correctional officer; that he refused to execute a release as required by the conditions of his probation; and that he refused to enter the Yokefellow House Program contrary to the conditions of his probation. The second motion alleged that Dickinson twice exposed himself to another female correctional officer. The third motion alleged that Dickinson committed the offense of trafficking in prison contraband by possessing a sharpened toothbrush. On August 26, 1997, the Superior Court (Cumberland County, *Bradford, J.*) revoked Dickinson's probation and ordered him to serve three years of the suspended portion of the sentence.

[¶ 7] "We review only those cases that present a justiciable controversy." *Sordyl v. Sordyl,* 1997 ME 87, ¶ 4, 692 A.2d 1386, 1387. If the issues raised by an appeal become moot, the appeal does not present a justiciable controversy. *See id.*[5] "The test for mootness is whether 'sufficient practical effects [flow] from the resolution of [the] litigation to justify the application of limited judicial resources.' " *Campaign for Sensible Transp. v. Maine Turnpike Auth.,* 658 A.2d

213, 215 (Me.1995) (quoting *State v. Gleason,* 404 A.2d 573, 578 (Me.1979)). We will not decide an issue that has been stripped of its controversial vitality " 'by virtue of legally valid and recognizable supervening circumstances[.]' " *Id.* (quoting *Good Will Home Ass'n v. Erwin,* 285 A.2d 374, 379 (Me.1971)). A dispute lacks controversial vitality if a decision by this court would not provide the appellant with any real or effective relief. *See International Paper v. United Paperworkers Int'l,* 551 A.2d 1356, 1360–61 (Me. 1988).

[¶ 8] Whether Dickinson can be forced to reside at the BPRC during his term of probation is no longer a justiciable issue. The revocation of Dickinson's probation is a legally valid and recognizable supervening circumstance that has stripped this dispute of its controversial vitality. Because his probation has been revoked, Dickinson will remain incarcerated for three years and a decision on the legality of the amendment to the conditions of his probation would not provide him with real or effective relief. *See United Paperworkers Int'l,* 551 A.2d at 1360–61. Moreover, there is little likelihood that the issue will arise again in similar circumstances. *See Lockman v. Secretary of State,* 684 A.2d 415, 420 (Me.1996) (stating that justiciability requires controversy based on existing facts, not facts that may develop in the future).

The entry is:

Appeal dismissed.

---

4. The amendment that Dickinson challenges here is no more restrictive than the original conditions of probation, which grant the Department of Probation plenary authority to dictate where Dickinson would live. In this appeal, Dickinson *does not contest* the validity of those original conditions.

5. None of the exceptions to the mootness doctrine apply to this case. *See Sordyl,* 1997 ME 87, ¶ 5, 692 A.2d at 1387.